EXECUTIVE SOFTWARE NORTH
AMERICA, INC.; Craig Jensen;
Sally Jensen, Petitioners,

v.

UNITED STATES DISTRICT COURT
FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent,

Donna L. Page, Real Party in Interest.

No. 93–70679.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1993.

Filed Jan. 27, 1994.

Opinion Withdrawn May 16, 1994.

Filed May 16, 1994.

Belle C. Mason, Gregory N. Karasik, Knee & Mason, Los Angeles, CA, for petitioner.

David Baca, Jr., Lewis, Marenstein, Wicke & Sherwin, Woodland Hills, CA, for real party in interest.

Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.

## ORDER

The opinion and dissent filed January 27, 1994, slip op. 853, and appearing at 15 F.3d 1484 (9th Cir.1994), are withdrawn. A new opinion and dissent are filed in their place.

## OPINION

D.W. NELSON, Circuit Judge:

Executive Software North America, Inc., Craig Jensen, and Sally Jensen ("Petitioners") petition this court for a writ of mandamus to compel the United States District Court for the Central District of California to retain jurisdiction over certain pendent state law claims filed in an employment discrimination suit against them by the plaintiff-real-party-in-interest, Donna Page. Petitioners[1] contend that, in remanding the plaintiff's pendent state law claims, the district court misapprehended the scope of the supplemental jurisdiction statute, 28 U.S.C.A. § 1367 (West Supp.1992), and failed to undertake the case-specific analysis required by that statute. In addition, Petitioners contend that, on a proper application of section 1367, a remand of their state law claims cannot be justified. Finally, Petitioners assert that mandamus is their only means of remedying this asserted error. For the reasons stated below, we grant the writ, but on narrower grounds than urged by the parties.

### Factual and Procedural Background

On April 8, 1993, Donna Page filed a complaint in state court against the petitioners. She claimed to have experienced several acts of discrimination during her employment with Executive Software. Specifically, Page, a black female, alleged that the company required all of its employees to study the teachings of the Church of Scientology written by L. Ron Hubbard. Page contends that when she refused to comply, she was charged with having made a number of errors in her work, and that when she attempted to contest the charges she was denied an opportunity to do so and was terminated. Page further asserts that the charges and subsequent termination were a mere "subterfuge for illegal discrimination against non believers in the Church of Scientology, women and racial minorities."

In her complaint, Page alleged two federal causes of action, (1) a claim under Title VII, 42 U.S.C. § 2000(e) *et seq.* (1988), and (2) a claim under 42 U.S.C. § 1983 (1988), as well as three state-law causes of action, including (1) a claim for unlawful religious and racial discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 (Deering 1982 & Supp. 1992), (2) a claim of wrongful termination in violation of the California Constitution, Art. I § 7(a), and (3) a claim for negligent supervision.

Based on the two federal claims, the defendants removed the action to federal court. Subsequently, on May 20, 1993, the district court issued an order *sua sponte* to show cause why the three state-law claims should not be remanded to state court. The court stated that "jurisdiction over the state claims depends upon whether this Court exercises its discretion to retain [them]," and admonished the parties to consider that "the Supreme Court defined the parameters of a federal court's supplemental jurisdiction in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)." After noting the requirements set forth in *Gibbs* for exercising supplemental jurisdiction, the Court added:

> Even if [the *Gibbs* test is] met, however, a federal court has discretion to decline jurisdiction over state law claims if, for instance, the state claims substantially predominate, the state claims involve novel or complex issues of state law, trial of the state and federal claims together is likely to result in jury confusion, or retention of the state claims requires the expenditure of substantial additional judicial time and effort. [*Gibbs,* 383 U.S.] at 726–27 [86 S.Ct. at 1139–40]; *see also* 28 U.S.C. § 1367(c); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343 [108 S.Ct. 614, 98 L.Ed.2d 720] (1988).

The Removing Party(ies) should also be aware that this Court does not interpret the 1990 enactment of Section 1367 as restricting the discretionary factors set forth in *Gibbs.* Rather, this Court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdiction over supplemental parties, which

---

1. Because the parties are in substantial agreement in their arguments, we use "Petitioners" to refer to arguments advanced by both the petitioners and the plaintiff.

was previously foreclosed by *Finley v. United States*, 490 U.S. 545 [109 S.Ct. 2003, 104 L.Ed.2d 593] (1989).

The district court thereafter remanded the three state law claims, but provided no reasons.

## Analysis

This petition presents several issues. First, we must determine whether we may review the district court's order in this case and if mandamus properly is invoked. Second, we must determine whether the district court clearly erred in its interpretation and application of the supplemental jurisdiction statute, 28 U.S.C.A. § 1367 (West Supp. 1992), and if other factors counsel in favor of issuing the writ.

## I. Reviewability

■ On its face, section 1447(d) of the Judicial Code would appear to bar review of the remand order in this case. That provision provides, with one exception not relevant here, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d) (1988). In *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), however, the Supreme Court held that section 1447(d) barred review only of those remand orders "issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and without jurisdiction," *id.* at 346, 96 S.Ct. at 590; *see also Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 723–24, 97 S.Ct. 1439, 1439–40, 52 L.Ed.2d 1 (1977) (per curiam) (finding unreviewable a remand order that purported to rely on § 1447(c)). In this circuit, a district court's order remanding pendent state law claims on discretionary grounds is not considered one made pursuant to section 1447(c). *See Lee v. City of Beaumont*, 12 F.3d 933, 935 (9th Cir.1993); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1539 (9th Cir.1992).

■ In this case, the district court did not provide reasons for remanding the plaintiff's state law claims. In instances of ambiguity, this circuit "look[s] to the substance of the order to determine whether it was issued pursuant to section 1447(c)." *Schmitt v. Insurance Co. of N. Am.*, 845 F.2d 1546, 1549 (9th Cir.1988). Here, the court retained jurisdiction over the federal claims asserted by the plaintiff, and we have held that asserting "original jurisdiction over at least one of the claims" "removes the possibility that a remand order is issued pursuant to section 1447(c)." *Kunzi v. Pan Am. World Airways, Inc.*, 833 F.2d 1291, 1295 (9th Cir.1987). Accordingly, the remand order in this case is reviewable.

■ "Even though the order is reviewable, we may review the order only pursuant to the proper type of review." *Lee*, 12 F.3d at 935. The Supreme Court in *Thermtron* held that remand orders, because they are not "final judgment[s] reviewable by appeal" are properly reviewed by " 'mandamus to compel action, and not by writ of error to review what has been done.' " *Thermtron*, 423 U.S. at 353, 96 S.Ct. at 594 (quoting *Railroad Co. v. Wiswall*, 90 U.S. (23 Wall.) 507, 508, 23 L.Ed. 103 (1875)). We have recognized a narrow exception to the availability of mandamus when the remand order can be appealed as a "collateral order" under the doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), *see, e.g., Lee*, 12 F.3d at 935–36 (citing *Whitman v. Raley's Inc.*, 886 F.2d 1177, 1180 (9th Cir.1989)). If the order properly is appealable as a collateral order, then mandamus is barred. *See, e.g., Survival Sys. v. United States Dist. Court*, 825 F.2d 1416, 1418 (9th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276–78 (9th Cir.1984); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74 L.Ed.2d 765 (1983) ("[F]undamentally, a court of appeals has no occasion to engage in extraordinary review by mandamus 'in aid of [its] jurisdictio[n],' 28 U.S.C. § 1651, when it can exercise the same review by a contemporaneous ordinary appeal."); *cf. Badham v. United States Dist. Court*, 721 F.2d 1170, 1171 (9th Cir.1983) ("[W]e may not exercise mandamus jurisdiction over an action which is subject to direct appeal." (citing *Moses H.*

*Cone)), cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985).

Petitioners contend that the collateral order doctrine is inapplicable because the district court did not resolve an issue of substantive law, but merely declined supplemental jurisdiction as a matter of discretion. Although we note that other circuits construe the collateral order doctrine in this context more broadly, *see, e.g., Travelers Ins. v. Keeling,* 996 F.2d 1485, 1489 (2d Cir.1993) (finding an order collateral if it "determines whether the dispute will be ... litigated in state court"), and more narrowly, *see, e.g., Doughty v. Underwriters at Lloyd's,* 6 F.3d 856, 862–64 (1st Cir.1993); *Garcia v. Island Program Designer, Inc.,* 4 F.3d 57, 60 (1st Cir.1993); *see also PAS v. Travellers,* 7 F.3d 349, 352–53 (3d Cir.1993) (rejecting the doctrine altogether), in this circuit, to qualify as "collateral" the order must "resolve[ ] the merits of a matter of *substantive law* apart from any jurisdictional decision," *e.g., Survival Systems,* 825 F.2d at 1418 (emphasis added); *Whitman,* 886 F.2d at 1180. While we do not know the precise reasons that compelled the district court to remand the plaintiff's state law claims, the basis of the remand was clearly a discretionary refusal to entertain those claims. *See* Show Cause Order at 1 ("[J]urisdiction over the state claims depends on whether this Court exercises its discretion to retain [them].""). This is not a decision on a matter of substantive law *apart from* a jurisdictional decision. *See Lee,* 12 F.3d at 936.

In addition, Petitioners did not attempt certification through the mechanism provided by 28 U.S.C. § 1292(b) before seeking mandamus.[2] However, we do not believe seeking certification is a *prerequisite* for invoking mandamus. Even if the remand order meets the section 1292(b) criteria, the district court must agree to certify the order (a decision that itself is unreviewable), and the court of appeals must exercise its discretion to entertain the action before a section 1292(b) appeal can proceed. Clearly, this is not a "contemporaneous *ordinary* appeal," *Cone,* 460 U.S. at 8 n. 6, 103 S.Ct. at 933 n. 6 (emphasis added), that would turn the writ into a "substitute for appeal," *e.g., Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). Moreover, *requiring* an attempt to obtain certification before seeking mandamus would be contrary to our practice of occasionally treating appeals that fail to meet the strict requirements of the "collateral order" doctrine as writs of mandamus. *See, e.g., Lee,* 12 F.3d at 936; *National Org. for Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 541 (9th Cir. 1987) (citing *Hartland v. Alaska Airlines,* 544 F.2d 992, 1001 (9th Cir.1976)); *Price v. PSA, Inc.,* 829 F.2d 871, 873–74 (9th Cir. 1987) (finding only mandamus appropriate when both a petition for the writ and an appeal under the collateral order doctrine were attempted), *cert. denied* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988); *see also Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31, 35 (2d Cir.1988) (treating an improvident appeal as a writ of mandamus). The instances in which we have required section 1292(b) certification clearly have been based on prudential considerations. *See, e.g., Mohasco Indus., Inc. v. Lydick,* 459 F.2d 959, 960 (9th Cir.1972).

Finding no bar to our review of the petition, we turn to its merits.

## II. Should Mandamus Issue?

Mandamus is an extraordinary remedy that may be obtained "only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87

---

**2.** Section 1292(b) provides in part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals .. may thereupon, in its discretion, permit an appeal to be taken from such an order....

28 U.S.C. 1292(b) (1988).

L.Ed. 1185 (1943)). To issue the writ, the court must be "'firmly convinced that the district court has erred,'" *Valenzuela–Gonzalez v. United States Dist. Court,* 915 F.2d 1276, 1279 (9th Cir.1990) (quoting *Seattle Times v. United States,* 845 F.2d 1513, 1515 (9th Cir.1988)), and that "the petitioner's right to the writ is 'clear and indisputable,'" *id.* (quoting *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). Consequently, we review for clear error and not abuse of discretion. *See, e.g., Survival Systems,* 825 F.2d at 1418–1419 nn. 1–2; *Badham,* 721 F.2d at 1171 ("[O]n direct appeal we review the district court's order under an 'abuse of discretion' standard while under mandamus jurisdiction we employ a more stringent standard of review." (citation omitted)); *cf. Schlagenhauf,* 379 U.S. at 110, 85 S.Ct. at 238 ("The writ is appropriately issued ... when there is 'usurpation of judicial power' or a clear abuse of discretion[.]" (quoting *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953))).

This circuit has adopted five "objective principles," *United States v. Harper,* 729 F.2d 1216, 1221–22 (9th Cir.1984), for guiding determinations concerning when mandamus should issue: "(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires"; "(2) The Petitioner will be damaged or prejudiced in a way not correctable on appeal"; "(3) The district court's order is clearly erroneous as a matter of law"; "(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and "(5) The district court's order raises new and important problems, or issues of law of first impression." *Valenzuela–Gonzalez,* 915 F.2d at 1279 (quoting *In re Allen,* 896 F.2d 416, 419–20 (9th Cir.1990) (quoting *Bauman v. United States,* 557 F.2d 650, 654–55 (9th Cir.1977))).

■ Although we have written of these five factors that "no single [one] is determinative," *id.* at 1279 (citing *Bauman,* 557 F.2d at 654–55), and that "all five factors need not be satisfied at once," *id.* (citing *In re Cement Antitrust Litig.,* 688 F.2d 1297, 1301 (9th

Cir.1982), *aff'd mem. sub nom. Arizona v. Ash Grove Cement Co.,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)), it is clear that the third factor, the existence of clear error as a matter of law, is dispositive, *see Survival Systems,* 825 F.2d at 1418 & 1419 n. 2 (finding all other factors irrelevant after concluding the district court's conclusions were legally correct); *cf. Harper,* 729 F.2d at 1222 (pointing out that the guidelines "'are not meant to supplant reasoned and independent analysis by appellate courts'" (quoting *In re Cement,* 688 F.2d at 1301)). Accordingly, we first examine whether the district court clearly erred. After this discussion, we examine whether the other factors in the mandamus calculus point in favor of granting the writ.

### A. Did the District Court Commit Clear Error?

The district court provided no reasons for its remand. However, in its Show Cause Order, the court stated that it did not "interpret Section 1367 as restricting the discretionary factors set forth in *Gibbs.* Rather, this court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdiction over supplemental parties, which was previously foreclosed by *Finley v. United States,* 490 U.S. 545 [109 S.Ct. 2003, 104 L.Ed.2d 593] (1989)." In addition, the district court listed a number of factors that it took as illustrative of permissible bases for remanding pendent state law claims under *Gibbs* and its progeny, including whether "retention of the state claims requires the expenditure of additional judicial time and effort."

We find this interpretation of section 1367 erroneous. It is clear that, once it is determined that the assertion of supplemental jurisdiction is permissible under sections 1367(a) and (b), section 1367(c) provides the only valid basis upon which the district court may decline jurisdiction and remand pendent claims. Moreover, we conclude that although subsections (c)(1)–(3) appear to codify most preexisting applications of the *Gibbs* doctrine, subsection (c)(4), which also permits a court to decline jurisdiction when, "in exceptional circumstances, there are other compel-

ling reasons," channels the district court's discretion to identify new grounds for declining jurisdiction more particularly than did preexisting doctrine. Accordingly, we conclude the district court erred to the extent that it relied on a basis for remanding pendent claims not permitted under section 1367(c). Finally, we conclude that, because the district court failed to articulate reasons for its remand of the pendent claims, we cannot determine whether the district court relied on a statutory ground and exercised its discretion in a permissible manner. Consequently, we conclude that the district court clearly erred.

### 1. *The Gibbs Test and the Origins of Section 1367*

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), broadly authorized the federal courts to assert jurisdiction over state law claims when "[t]he state and federal claims ... derive from a common nucleus of operative fact," the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are "substantial[ ]." *Id.* at 725, 86 S.Ct. at 1138. These three factors conferred power on the federal courts under Article III to hear the entire "constitutional" case. *See id.* The Court added critically, however, that:

> [Such] power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state law claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. at 1139 (citation and footnote omitted). The Court then described several scenarios in which declining to exer-

cise power to entertain pendent state-law claims would be appropriate: (1) when "the federal claims are dismissed before trial"; (2) when "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought"; and (3) when separation of the state and federal claims is justified by "reasons independent of jurisdictional considerations, such as the likelihood of jury confusion." *Id.* at 726–27, 86 S.Ct. at 1139.[3]

Although some courts referred to these scenarios as the *Gibbs* "factors," *e.g., Financial Gen. Bankshares, Inc. v. Metzger,* 680 F.2d 768, 722–73 & n. 6 (D.C.Cir.1982), it is clear that they constituted merely illustrative applications of *Gibbs*'s animating values and were not meant to be exhaustive, *see, e.g., Notrica v. Board of Supervisors,* 925 F.2d 1211, 1213 (9th Cir.1991) (characterizing the first scenario described above as an "example" of the "proper discretionary exercise of pendent jurisdiction"). As the Supreme Court emphasized in *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988):

> Under *Gibbs*, a federal court should consider and weigh in each case, at every stage of the litigation, *the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims.* When the balance *of these factors* indicates that a case properly belongs in state court, *as* when the federal claims have dropped out of the lawsuit in its early stages, the federal court should decline the exercise of jurisdiction.... As articulated in *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that *most sensibly accommodates a range of concerns and values.*

**3.** The Court also noted one scenario in which pendent jurisdiction ordinarily would be *appropriate:* when "the allowable scope of the state claim implicates the federal doctrine of pre-emption." *Id.* at 727, 86 S.Ct. at 1139.

*Id.* at 350, 108 S.Ct. at 619 (citation and footnote omitted) (emphasis added);[4] *see also Hagans v. Lavine,* 415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974) (describing *Gibbs* as requiring courts to consider the values of "judicial economy, convenience, and fairness to the litigants" as well as comity in determining whether an exercise of discretion would be appropriate). Indeed, the Court in *Carnegie–Mellon* noted that *Gibbs* did not "directly address" the issue it faced: whether a court has discretion to remand, instead of dismiss, state law claims when it has determined that retaining jurisdiction is inappropriate. *Id.* at 351, 108 S.Ct. at 619–20. The Court found such an extension of the pendent jurisdiction doctrine justified by *Gibbs*'s underlying values:

> [*Gibbs*] establishes that pendent jurisdiction doctrine is designed to enable courts to handle cases involving state law claims in the way that *will best accommodate the values of economy, convenience, fairness, and comity,* and *Gibbs* further establishes that the Judicial Branch is to shape and apply the doctrine in that light.

*Id.* at 351, 108 S.Ct. at 619 (emphasis added).

Similarly, the Supreme Court's directive to test the appropriateness of pendent jurisdiction against the values of "economy, convenience, fairness, and comity" and its emphasis that the doctrine is one of "flexibility" led a number courts to decline pendent jurisdiction in situations not mentioned specifically in *Gibbs.* For instance, building on the statement in *Gibbs* that "[n]eedless decisions of state law should be avoided both as a matter of comity" and to provide the parties with "a surer-footed reading of applicable law," *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, some courts found it appropriate to decline pendent jurisdiction when the comity concerns embodied in abstention doctrines were implicated. *See, e.g., United States ex rel. Small Business Admin. v. Pena,* 731 F.2d 8,

15 (D.C.Cir.1984) ("Moreover, even when *Gibbs* has no application, pendent jurisdiction should sometimes be declined when local law issues are unsettled, complex, or novel."); *see also Jones v. Fitch,* 665 F.2d 586, 593 (5th Cir. Unit A 1982) (approving a remand of pendent state law claims in part because of "the existence of an issue of state constitutional law not previously addressed by the state supreme court"); *Metzger,* 680 F.2d at 776 ("[A] federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance."); *Gingerich v. White Pigeon Community Schs.,* 736 F.Supp. 147, 149–51 (W.D.Mich.1990) ("When novel issues of state law are presented, though, considerations of judicial economy are not determinative."). This application of *Gibbs*'s underlying values was discussed approvingly by the Supreme Court. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 122 n. 32, 104 S.Ct. 900, 920 n. 32, 79 L.Ed.2d 67 (1984) (intimating that pendent jurisdiction would be inappropriate when the concerns articulated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) were implicated); *see also Shaffer v. Board of Sch. Directors,* 730 F.2d 910, 912 n. 1 (3d Cir. 1984) ("[*Pennhurst*] emphasized the reluctance of federal courts to decide important and unclear issues of state law under principles of pendent jurisdiction."). And recently, the Tenth Circuit relied generally on the *Carnegie–Mellon* Court's statement that *Gibbs* should be applied in a manner " 'that will best accommodate the values of economy, convenience, fairness, and comity' " in approving the decline of pendent jurisdiction in a RICO case when certain other state claims had to be remanded. *Westinghouse Credit Corp. v. Thompson,* 987 F.2d 682, 684–85 (10th Cir.1993) (quoting *Carnegie–Mellon,* 484 U.S. at 351, 108 S.Ct. at 619–20);

---

4. The *Carnegie–Mellon* Court reiterated this point in explaining why the statement in *Gibbs* that "if the federal claims are dismissed before trial … the state claims should be dismissed as well," *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, should not be taken as "a mandatory rule to be applied inflexibly in all cases," *Carnegie–Mellon,* 484 U.S. at 250 n. 7, 108 S.Ct. at 557 n. 7 (citing *Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970)):

The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, *the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity*—will point toward declining to exercise jurisdiction over the remaining state law claims.

*Id.* (emphasis added).

cf. Emrich v. Touche Ross & Co., *846 F.2d 1190, 1196 (9th Cir.1988).*[5]

Of course, even when called upon to evaluate the propriety of pendent jurisdiction in one of the three scenarios set forth by the *Gibbs* Court, courts almost uniformly found that the district court's discretion must be guided by the principle that the goal of pendent jurisdiction is to "'best accommodate the values of economy, convenience, fairness, and comity.'" *E.g., Lee,* 12 F.3d at 937 (finding no abuse of discretion in remanding state law claims after the federal claims had been dismissed) (quoting *Harrell v. Twentieth Century Ins. Co.,* 934 F.2d 203, 205 (9th Cir.1991) (quoting *Carnegie–Mellon,* 484 U.S. at 351, 108 S.Ct. at 619–20)); *Notrica,* 925 F.2d at 1213–15 (same); *Brown v. Southwest Bell Tel. Co.,* 901 F.2d 1250, 1254–55 (5th Cir.1990) (reaching the opposite result). *See generally* 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.1, at 112–127 & nn. 13–16 (1984) (citing cases); *id.* at 26–27 & nn. 13–16 (Supp. 1992) (same).

Therefore, under the regime established by *Gibbs, Carnegie–Mellon,* and their progeny, whether pendent jurisdiction should be exercised in a given circumstance depended on the district court assessing whether doing so "would most sensibly accommodate" the values of "economy, convenience, fairness, and comity." Although the specific examples given in *Gibbs* informed the determination of *when* the particular balance of these factors was likely to point against (or in favor) of retaining jurisdiction, courts by no means found these specific illustrations to exhaust *Gibbs*'s underlying values.

The very flexibility of this approach led to the doctrine's most severe criticism. As noted by many commentators, the primary deficiency of the *Gibbs* regime was that it blurred the question of the *power* of the federal courts to entertain pendent claims under Article III with the question of congressional statutory *authorization* of such jurisdiction. *See generally* Paul M. Bator, Daniel J. Meltzer, Paul J. Mishkin & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1044–52 (3d ed. 1988) [hereinafter Hart and Wechsler]. The Supreme Court's subsequent decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), highlighted the problems of an absence of firm statutory authority, for the Court refused to find the assertion of jurisdiction over pendent *parties* permissible absent congressional authorization even when federal jurisdiction was exclusive, *see id.* at 549–56, 109 S.Ct. at 2006–07.

Prior to *Finley,* a number of lower federal courts had permitted pendent-party jurisdiction as long as Congress had not "expressly or by implication negated its existence," *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). *See generally* 13B Wright & Miller, *supra,* § 3567.2 at 30–32 & n. 44 & Supp.1992 at 36 nn. 34–35 (collecting cases).[6] *Finley,* however, appeared to articulate the *opposite* presumption: that unless Congress affirmatively *conferred* pendent-party jurisdiction, it would not be permitted. Indeed, a number of courts interpreted *Finley* "as putting an end to [pendent-party] jurisdiction," *id.* § 3567.2, at 30; *see also id.* at 32–33 n. 49 (citing cases), as well as threatening aspects of ancillary jurisdiction, *see id.* § 3567.2, at 30.

---

5. The *Gibbs* values also have been applied in new contexts to find the assertion of pendent jurisdiction especially *appropriate. See, e.g., Schmidt v. Oakland Unified Land Dist.,* 457 U.S. 594, 595, 102 S.Ct. 2612, 2612, 73 L.Ed.2d 245 (1982) (holding that it was an abuse of discretion under *Gibbs* not to assert pendent jurisdiction over dispositive state-law claims when doing so would have avoided reaching the issue of the constitutionality of an affirmative-action plan); *Hagans,* 415 U.S. at 548, 94 S.Ct. at 1385 (stating that an application of the *Gibbs* values indicated that pendent jurisdiction would be appropriate when the "claim is *federal* but is itself beyond the

jurisdiction of the District Court for failure to satisfy the [then required] amount in controversy." (emphasis in original)).

6. Similarly, a number of courts refused to permit jurisdiction over pendent *claims* under *Gibbs* when an implied congressional negation of such jurisdiction was found. *See generally* 13B Wright & Miller, *supra,* at 22 & nn. 30.1–30.4 (Supp.1992) (discussing a split of authority concerning whether pendent jurisdiction is appropriate when the federal claim is one premised upon Title VII or the ADEA).

As a result, *Finley* evoked severe criticism. *See generally* Hart and Wechsler, *supra*, at 134–36 (Supp.1993); Richard B. Freer, *Compounding Confusion and Hampering Diversity: Life after Finley and the Supplemental Jurisdiction Statute*, 40 Emory L.J. 445, 464–68 (1991). In response, the Federal Court Study Committee, established by Congress in 1988, made an express recommendation to provide a statutory basis for pendent, ancillary, and pendent-party jurisdiction in a "supplemental" jurisdiction statute. *See* Report of the Federal Court Study Committee 47–48 (Apr. 2, 1990) [hereinafter FCSC Report]. Subsequently, Congress enacted such a statute, 28 U.S.C.A. § 1367 (West Supp. 1992), as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089.[7]

### 2. *The Relationship of Section 1367(c) to Gibbs*

Initially, we must determine whether, as Petitioners contend, the section 1367(c) factors are the exclusive means by which supplemental jurisdiction, if permitted by sections 1367(a) and (b), can be declined. In addition, we must ascertain whether the scope of the section 1367(c) categories is coextensive with the *Gibbs* regime, or if, as Petitioners contend, section 1367 has altered the analysis.

### a.

Section 1367 retains the basic division, reflected in *Gibbs*, between the power of a court to entertain a pendent claim and the authority of a court, in its discretion, to decline to exercise that power. However, Congress, in codifying supplemental jurisdiction, has chosen to codify as well the discretionary factors that warrant declining jurisdiction. Section 1367(a), providing that "the district courts *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C.A. § 1367(a) (West Supp.1992) (emphasis added), confers power to entertain supplemental jurisdiction in mandatory terms. By use of the word "shall," the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibited by section 1367(b),[8] a court can decline to assert supple-

---

7. The Complete text of § 1367 provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over claims under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court had original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) as used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

28 U.S.C.A. § 1367 (West Supp.1992).

8. Section 1367(b) prohibits the assertion of supplemental jurisdiction when the policies behind the limitations on diversity jurisdiction would be defeated. *See generally* Colloquy, *Perspectives on Supplemental Jurisdiction*, 41 Emory L.J. 1

mental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in section 1367(c) applies. These are:

 (1) the claim raises a novel or complex issue of State law,

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c) (West Supp.1992).

■ By selecting this statutory structure, it is clear that Congress intended section 1367(c) to provide the exclusive means by which supplemental jurisdiction can be declined by a court. Not only is this conclusion supported by the legislative history, *see* H.R. No. 734, 101st Cong., 2d Sess. 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6861, 6875 [hereinafter House Report], but a contrary reading of the statute would appear to render section 1367(c) superfluous. Accordingly, unless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted. *See, e.g., Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1285 n. 14 (3d Cir. 1993) ("The language in § 1367 expressly . . . states . . . that federal courts *shall* exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and *may* decline to exercise jurisdiction [as provided by § 1367(c) ]." (emphasis in original)); *Godfrey v. Perkin–Elmer Corp.,* 794 F.Supp. 1179, 1184 (D.N.H.1992) ("[If] the court finds that it has the power to exercise supplemental jurisdiction over plaintiff's state law claims [it must exercise that jurisdiction] subject only to the narrow circumstances detailed by Congress."); *Cedillo v. Valcar Enters. & Darling Delaware Co.,* 773 F.Supp. 932, 939 (N.D.Tex.1991) ("If the claim is within the court's supplemental juris-

diction, the court must exercise such jurisdiction unless one of the four categorical exceptions in § 1367(c) is satisfied."); 13B Wright & Miller, *supra,* § 3567.3, at 39 (Supp.1992) ("The circumstances in which a court may exercise discretion to refuse to hear a case within its supplemental jurisdiction are quite strictly defined."); *cf. Picard v. Bay Area Regional Transit Dist.,* 823 F.Supp. 1519, 1523 (N.D.Cal.1993) (conducting the two-step analysis prescribed by the statute's structure).

### b.

A consequence of the statutory structure chosen by Congress is that section 1367(c) somewhat changes the nature of the *Gibbs* discretionary inquiry. Although, as discussed above, *Gibbs* and its progeny identified a number of concrete instances in which declining pendent jurisdiction normally would be appropriate, the ultimate inquiry for the courts remained whether the assertion of pendent jurisdiction "best accomodate[s] the values of economy convenience, fairness and comity." *Carnegie–Mellon,* 484 U.S. at 351, 108 S.Ct. at 619. Application of these underlying values to circumstances not identified in prior cases was not only contemplated, but demanded. *See id.* at 350, 108 S.Ct. at 619 ("Under *Gibbs,* a federal court should consider and weigh [these values] in *each case* and at *every stage* of the litigation." (emphasis added)).

The statute, however, channels the application of the underlying values to a greater degree than the *Gibbs* regime, although section 1367(c) continues to recognize the doctrine's dynamic aspects. Subsections (c)(1)–(c)(3) appear to codify concrete applications of the underlying *Gibbs* values recognized in preexisting case law. Subsection (c)(2) (state law claim "substantially predominates") and (c)(3) (district court has dismissed all claims over which it had original jurisdiction), are derived directly from *Gibbs* itself, *see Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40, while subsection (c)(1), permitting a remand when "the claim raises a novel or complex issue of

---

(1992). None of the concerns embodied in § 1367(b) are raised by this case. In addition, the proviso to § 1367(a), that supplemental juris-

diction cannot be asserted if expressly prohibited by a federal statute, similarly does not apply.

State law," implicates the subsequently developed line of cases tacitly approved of in *Pennhurst, see supra* p. 1553; *cf. Godfrey,* 794 F.Supp. at 1185 (contending that subsections (c)(1) and (c)(2) both implicate abstention doctrines).

 By codifying preexisting applications of *Gibbs* in subsections (c)(1)–(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories. Once that factual predicate is identified, the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comports with the underlying objective of "most sensibly accommodat[ing]" the values of "economy, convenience, fairness, and comity." *See, e.g., Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1309 (9th Cir.1992) (holding that "the factors [of] economy, convenience, fairness, and comity" informed the application of section 1367(c)(3)) (citing *Carnegie–Mellon,* 484 U.S. at 353, 108 S.Ct. at 620–21), *cert. denied,* —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); *Growth Horizons,* 983 F.2d at 1284 (considering the *Gibbs* values in applying subsection (c)(3)); *Lewis v. Law-Yone,* 813 F.Supp. 1247, 1257 (N.D.Tex.1993) (same); *Roe v. Little Co. of Mary Hosp.,* 800 F.Supp. 620, 626–27 (N.D.Ill.1992) (considering whether "judicial economy and efficiency would be best served" in applying section 1367(c)(2) (internal quotations omitted)); *cf. Picard,* 823 F.Supp. at 1527 (applying *Gibbs* in interpreting section 1367(c)(2)). *But see LaSorella v. Penrose St. Francis Healthcare Sys.,* 818 F.Supp. 1413, 1415–16 (D.Colo. 1993) (asserting that section 1367(c) eviscerated aspects of *Gibbs* ). *See generally* House Report, *supra,* at 29 (1990), *reprinted in* 1990

U.S.C.C.A.N. 6860, 6875 ("As under current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis."); Dennis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis,* 24 Ariz.St.L.J. 849, 976–77 (1992).

We believe that the "catchall," *Palmer v. Schwan's Sales Enters., Inc.,* 1993 WL 390053, at *2, 1993 U.S.Dist. LEXIS 14069, at *7 (D.Kan. Sep. 27, 1993), provided by subsection (c)(4) should be interpreted in a similar manner. Subsection (c)(4) permits a discretionary remand of pendent claims when *"in exceptional circumstances,* there are *other compelling reasons* for declining jurisdiction." 28 U.S.C.A. § 1367(c)(4) (West Supp. 1992) (emphasis added). Congress's use of the word "other" to modify "compelling reasons" indicates that what ought to qualify as "compelling reasons" for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)–(3). Because, as discussed above, the subsection (c)(1)–(3) fact patterns constitute situations in which the underlying *Gibbs* values ordinarily will "point toward" declining jurisdiction, *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7, we believe that "compelling reasons" for the purposes of subsection (c)(4) similarly should be those that lead a court to conclude that declining jurisdiction "best accommodate[s] the values of economy, convenience, fairness, and comity." *Carnegie–Mellon,* 484 U.S. at 351, 108 S.Ct. at 619.[9]

We do not believe, however, that Congress has replicated unaltered the command of the *Carnegie–Mellon* Court that the "Judicial Branch is to shape and apply [the doctrine of

9. We therefore reject the interpretation, suggested by some courts and commentators, that "compelling" in § 1367(c)(4) should be read *back* into § 1367(c)(1)–(3) in the sense that an exercise of discretion under those categories should be made only in narrower circumstances than permitted under their *Gibbs* counterparts. *See* David D. Siegel, *Practice Commentary,* 28 U.S.C.A. § 1367, at 236 (West Supp.1992) ("Rather than constitut[ing] a separate category for declining supplemental jurisdiction ... the language of clause (4) indicates that all declinations of supplemental jurisdiction should be reserved for situations in

which there are 'compelling reasons.' "); Wendy Collins Perdue, *The New Supplemental Jurisdiction Statute–Flawed but Fixable,* 41 Emory L.J. 69, 71 (1992); *cf. Rosen v. Chang,* 758 F.Supp. 799, 803 n. 6 (D.R.I.1991). The § 1367(c)(1)–(3) categories are instead best characterized as describing circumstances that ordinarily present "compelling" reasons in and of themselves for remanding pendent claims. *Cf.* McLaughlin, *supra,* at 981–82; Perdue, *supra,* at 94 (suggesting that § 1367(c)(1)–(3) could be viewed as "compelling reasons per se").

pendent jurisdiction] in [light of this objective]." *Id.* By providing that an exercise of discretion under subsection 1367(c)(4) ought to be made only in "exceptional circumstances" Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)–(3) only if the circumstances are quite unusual. In short, although we find that "other compelling reasons" clearly refers the district court back to the subsection (c)(1)–(3) categories, and thus requires the court to balance the underlying values that they embody, we think "exceptional circumstances" requires an additional inquiry.

■ Of course, when the balance of the *Gibbs* values indicates that there are "compelling reasons" to decline jurisdiction, the underlying circumstances that inform this calculus usually will demonstrate how the circumstances confronted are "exceptional." We do not believe, however, this always will be the case. Even when a court's balancing of the *Gibbs* values provides, in its judgment, "compelling reasons" for declining jurisdiction, it might still be the case that the differences between the case it is confronting and the case in which supplemental jurisdiction is appropriate are not sufficient to justify the conclusion that the court would, in fact, be applying subsection (c)(4) properly. We think that it clear from the language chosen by Congress, however, that declining jurisdiction outside of subsection (c)(1)–(3) should be the exception, rather than the rule. Courts therefore must ensure that the reasons identified as "compelling" are not deployed in circumstances that threaten this principle. The inquiry is not particularly burdensome. A court simply must articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances.

We think this interpretation is compelled not only by our understanding of the meaning of the term "other" in subsection (c)(4)

and a common-sense understanding of "exceptional," but also by the statutory structure of section 1367(c). As discussed above, the subsection (c)(1)–(3) categories require both the presence of a factual predicate that triggers the exercise of discretion and a case-specific analysis of whether the *Gibbs* values would be best served by declining jurisdiction. Our interpretation of subsection (c)(4) carries forward this structure into that subsection: the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons).

We also think this result is mandated by the plain language of the statute—that *"in exceptional circumstances,* there are *other compelling reasons* for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (West Supp. 1992) (emphasis added). To deprive "in exceptional circumstances" of all meaning would unnecessarily conflate distinct statutory terms, a result that we are reluctant to embrace. *See, e.g., Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) ("[It is an] elementary cannon of construction that a statute should be interpreted so as not render one part inoperative."); *see also Wilson v. Turnage,* 750 F.2d 1086, 1091 (D.C.Cir.1984) ("When different terms are used in a single piece of legislation, the court must presume that Congress intended the terms to have different meanings."), *vacated on other grounds,* 755 F.2d 967 (D.C.Cir.1985), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *National Insulation Transp. Comm. v. I.C.C.,* 683 F.2d 533, 537 (D.C.Cir.1982) ("Congress' 'choice of different verbs to characterize the two situations is a choice which we properly take as evidence of an intentional differentiation.'" (quoting *United States v. Rice,* 671 F.2d 455, 460 (11th Cir.1982))). Moreover, there is no clear pre-section 1367(c) definition of the term that would lead us to conclude that Congress intended otherwise.[10]

---

10. Prior to *Carnegie–Mellon,* the Second Circuit used "exceptional circumstances" in the context of the *Gibbs* regime to refer to those circum- stances that would justify retaining jurisdiction despite the federal claim's early dismissal from the case. *See, e.g., Kavit v. A.L. Stamm & Co.,*

Therefore, to the extent that *Gibbs* and *Carnegie–Mellon* were interpreted as permitting courts to extend the doctrine's underlying values beyond previously recognized applications *whenever* doing so was consistent with those values, *see, e.g., Westinghouse*, 987 F.2d at 684–85, we believe that section 1367(c)(4) more carefully channels courts' discretion by requiring the court to identify how the circumstances that it confronts, and in which it believes the balance of the *Gibbs* values provides "compelling reasons" for declining jurisdiction, are "exceptional."[11]

This interpretation of section 1367(c) not only comports with the text and structure of the statute as read against the preexisting doctrine, but also is entirely consistent with the legislative history.[12] Section 1367 was passed as section 310 of Title III of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, 5113–14 (1990). The intent of Congress was "to implement the noncontroversial recommendations of the Federal Courts Study Committee," 150 Cong. Rec. H13313 (Daily ed. Oct. 27, 1990) (statement of Rep. Kastenmeier), which was charged in 1988 with undertaking a complete study of the federal and state court systems, *see* Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100–702, 120 Stat. 4642, 4644. The Federal Court Study Committee, although recommending the codification of supplemental jurisdiction, did not prepare a statute, *See* FCSC Report, *supra*, at 47–48. Rather, the statute was drafted initially by a number of academics and then

491 F.2d 1176, 1180 & n. 4 (2d Cir.1974) (Friendly, J.) (noting that such circumstances might be present when dismissal would "sharply clash with the directive in *Gibbs* that pendent jurisdiction serve the ends of 'judicial economy, convenience, and fairness to litigants'" (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139)); *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). By contrast, the Third Circuit appeared to interpret "exceptional circumstances" more narrowly. *Compare Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir.1976) *with Weaver v. Marine Bank*, 683 F.2d 744, 750 (3d Cir.1982) (Sloviter, J., dissenting). Moreover, at the Supreme Court level, the most analogous use of "exceptional circumstances" is in the closely-related area of *Colorado River* abstention, where the Court has used the term to denote "'an extraordinarily narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (internal quotations omitted)). Without any indication from Congress that it intended to draw upon this disparate case law, we think that it simply meant to connote that § 1367(c)(4) should apply only in factual circumstances that truly are unusual.

11. Of course, we do not mean to suggest that the result in *Westinghouse*, or other cases that declined jurisdiction on grounds not included within § 1367(c)(1)–(3), would be impermissible under § 1367(c)(4). We do believe, however, that § 1367(c)(4) requires a district court both to consider how the circumstances of the case are

exceptional and to determine why declining jurisdiction best serves the *Gibbs* values.

12. Although cases applying § 1367(c)(4) to date have not focused carefully on its requirements, the interpretation offered here also is consistent with these decisions. *See Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir.1992) (finding "'exceptional circumstances' *and* 'compelling reasons'" when parallel state proceedings were underway and therefore the adjudication of state claims in a federal forum "would be a pointless waste of judicial resources" (emphasis added)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1067, 122 L.Ed.2d 371 (1993); *Picard*, 823 F.Supp. at 1527–28 (finding the state's interest in resolving a takings claim insufficient to implicate § 1367(c)(4) when the result would be to bifurcate the action); *Palmer*, 1993 WL 390053 at *3–5, 1993 U.S.Dist. LEXIS at *7–*13 (failing to find "exceptional" circumstances and considering the *Gibbs* values in undertaking this inquiry). *But see LaSorella*, 818 F.Supp. at 1415–16 (contending that the *Gibbs* values do not inform § 1367(c)(4)). However, we reject the Seventh Circuit's broad dicta that "the new statue is intended to codify rather than to alter the judge-made principles of pendent … jurisdiction," *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993); *cf. Pro–Choice Network v. Project Rescue*, 828 F.Supp. 1018, 1027 n. 7 (W.D.N.Y.1993) (contending that "[§ 1367] essentially codified existing caselaw on the subject of pendent jurisdiction" (alterations and internal quotations omitted)), to the extent that it suggests that the discretion of the district courts has not been further channeled under § 1367(c) than it was under *Gibbs*. *Cf. Whalen v. Carter*, 954 F.2d 1087, 1097 n. 10 (5th Cir.1992) ("It is unclear whether [section 1367] merely codifies the pendent jurisdiction or actually changes the doctrine in some fashion.").

underwent revision by the House Subcommittee on Courts, Intellectual Property, and the Administration of Justice after a one-day hearing before its final language was set. *See generally* Arthur D. Wolf. *Codification of Supplemental Jurisdiction: Anatomy of a Legislative Proposal*, 14 N.Eng.L.Rev. 1, 16–20 (1993). In the end, however, section 1367(c) received only one paragraph in the House Report that accompanied the final version of the statute:

> [Section 1367(c) ] codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim. Subsection (c)(1)–(3) codifies the factors recognized as relevant under current law. Subsection (c)(4) acknowledges that occasionally there may exist other compelling reasons for a district court to decline supplemental jurisdiction, which the subsection does not foreclose a court from considering in exceptional circumstances.

House Report, *supra*, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875.[13]

The above interpretation is consistent with this Report. As discussed above, under *Gibbs* and *Carnegie–Mellon*, the circumstances under which pendent jurisdiction would be declined consisted both of recognized concrete applications of the doctrine's underlying principles as well as a rather open-ended potential for application of those principles to new circumstances. This is how section 1367(c) *as a whole* codifies the "legitimate bases" upon which supplemental jurisdiction can be denied. However, as previously noted, the statute, in subsections (c)(1)–(c)(3) appears to have codified most of the concrete applications of the *Gibbs* values recognized by courts to date,[14] while subsection

(c)(4) carries forward the possibility of their *further* extension. This explains the characterization of subsections (c)(1)–(3) as the "factors *recognized* ... under *current law*" (emphasis added). Moreover, like the statute, the House Report's use of "other" indicates that the "compelling reasons" that implicate subsection (c)(4) should be interpreted to mean reasons as compelling as the preexisting applications of *Gibbs*. Finally, although the House Report does not acknowledge that the circumstances under which *Gibbs* previously had been extended were less channeled, the House Report confirms our conclusion that Congress intended that, outside of circumstances *already* recognized under current law that are codified in subsections (c)(1)–(c)(3), any *further* extension of *Gibbs* through subsection (c)(4) should be undertaken only when the district court both articulates "compelling reasons" for declining jurisdiction and identifies how the situation that it confronts is "exceptional."

c.

With the above analysis providing the necessary conceptual foundation, we conclude that the district court clearly erred. The court, although acknowledging section 1367(c), stated that it did not rely on the statute, but *Gibbs*. Although this might be insignificant if the Show Cause Order indicated that the court considered only the codified applications of *Gibbs* enumerated therein, the court further intimated that *Gibbs* permitted it to decline jurisdiction when "retention of the state claims [would] require[ ] the expenditure of substantial judicial time and effort." If this statement was intended to go beyond preexisting applications of *Gibbs* by invoking its underlying values, it was an impermissible attempt.[15] More fundamentally, as discussed

---

13. The Senate adopted the analysis of the House Report. *See* 150 Cong.Rec. S17577–81 (daily ed. Oct. 27, 1990) (statement of Sen. Grassley).

14. We observe that § 1367(c)(1)–(3) does not mention the *Gibbs* scenario of "jury confusion," despite the apparent intent of those subsections to codify previously recognized bases for declining jurisdiction. One court has suggested that "jury confusion" is embodied in § 1367(c)(2). *See Picard*, 823 F.Supp. at 1527. Another has suggested that it has been removed from the

permissible range of relevant factors entirely. *See LaSorella*, 818 F.Supp. at 1415. We intimate no view on the matter.

15. The district court's statement implies that it might have remanded the state law claims solely to ease docket congestion. This clearly is impermissible. *Cf. Thermtron*, 423 U.S. at 344–45 & n. 9, 96 S.Ct. at 590 & n. 9 (concluding that docket congestion was irrelevant to whether the court had jurisdiction, and therefore, that the court remanded the pendent claims for reasons unau-

above, subsection (c)(4) requires the district court not only to determine if consideration of the *Gibbs* values provides compelling reasons for a remand, but also to articulate how the circumstances that warrant declining jurisdiction are exceptional. Even if we were confident that the district court balanced the *Gibbs* values, there is no indication that it undertook this latter inquiry. Therefore, the district court clearly erred by articulating a basis for declining jurisdiction that is unauthorized by statute.

3. *The District Court's Failure to Provide Reasons Explaining its Remand Order Prevents this Court From Ascertaining Whether the Reasons Relied Upon were Permissible.*

▮ The district court's error might be harmless if it could fairly be discerned from the record that it *did* rely upon one of the codified *Gibbs* factors that it listed in the Show Cause Order and that it undertook the requisite analysis. Petitioners contend, however, that the need to apply a specific section 1367(c) category makes it *"incumbent* upon the district court to explain the basis for remand and explain the statutory grounds relied upon." Petitioner's Brief at 17 (emphasis added). In short, Petitioners maintain that the district court's failure to provide written reasons for its remand order constituted a *per se* violation of the statute.

Although we disagree that failure to state reason in itself is reversible error, *cf. Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 692 (9th Cir.1993) (finding an abuse of discretion in refusing leave to amend when "the district court did not provide an explanation" *and* "the reasons [for its refusal were] not apparent from the record"), *cert. denied,* —— U.S. ——, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994), in this particular case, we conclude that the failure to provide written reasons renders it impossible to determine whether the district court relied on permissible factors. As discussed above, the district court listed some applications of *Gibbs* now codified in subsections 1367(c)(1)–(3) in the Show Cause Order

as well as a factor that appeared an incomplete attempt to invoke the underlying *Gibbs* values. We cannot discern whether the district court relied upon the former or the latter. Under these circumstances, we cannot say that the district court exercised its discretion in an appropriate manner; accordingly, we conclude that the district court committed clear error. *See Perez v. Ortiz,* 849 F.2d 793, 798 (2d Cir.1988) (finding that the court's failure to articulate the particular reasons for remanding pendent claims constituted an abuse of discretion because it could not be ascertained whether that discretion had been exercised permissibly); *cf. Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir.1981) ("[W]here ... the district court does not set forth a persuasive, reasoned elaboration for dismissing the state claims, we are inclined to believe that the dictates of 'judicial economy, convenience, fairness to the parties, and comity' are better served by recognizing pendent jurisdiction" (citation omitted)).

B. *Is there Unrectifiable Prejudice?*

▮ We agree with Petitioners that failure to issue mandamus would result in prejudice that could not be rectified on appeal. Permitting the remand order to stand would result in splitting the adjudication of the plaintiff's claim between the state and federal systems. By the time an appeal after final judgment could be heard in either proceeding, matters might have proceeded to the point that the parties and the courts would have experienced significant burdens.

C. *Are there Other Adequate Means to Attain Relief?*

As noted above, Petitioners failed to seek certification pursuant to section 1292(b). Arguably, then, Petitioners have an alternative "adequate means ... to attain the relief ... desired." *Valenzuela–Gonzalez,* 915 F.2d at 1276 (internal quotations omitted). Petitioners' explanation for this omission is that an order that remands pendent state law claims cannot be a "controlling question of law" that could "materially affect the eventual outcome

thorized by statute although noting that pendent claims can be remanded for "discretionary rea- sons").

of the litigation" as required by section 1292(b). Petitioners' Brief at 8 (internal quotations omitted). However, we need not decide whether, in this case, section 1292(b) certification was available. Even if it were, we would not find it to preclude mandamus because seeking certification is not a prerequisite for obtaining mandamus, *see supra* p. 1550, and all the other factors relevant to whether mandamus should issue point in favor of granting the writ. *Cf. Caleshu v. Wangelin,* 549 F.2d 93, 96 n. 5 (8th Cir.1977) ("We do not think we are about to require that petitioner first seek interlocutory review when mandamus is clearly an appropriate remedy.").

### D. *Remaining Factors*

■ It is clear to us that the district court's errors in this case are significant; moreover, the relationship between section 1367 and the *Gibbs* regime is an important question of first impression in this circuit.[16] Therefore, issuing the writ would advance this circuit's policy that "mandamus is particularly appropriate when [a court] is called upon to determine the construction of a federal procedural rule in a new context." *Valenzuela–Gonzalez,* 915 F.2d at 1279 (citing, *inter alia, Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964)). Finally, because numerous cases involve supplemental jurisdiction, granting the writ to resolve the issues considered above would "substantially aid the administration of justice." *City of Las Vegas v. Foley,* 747 F.2d 1294, 1296 (9th Cir.1984).

### E. *The Scope of Relief*

■ Accordingly, we conclude that the issuance of the writ in this case is appropriate. We hold that the district court clearly erred by misapprehending the proper source of its discretion, thereby possibly relying on a basis for exercising its discretion not authorized by statute, and by failing to provide sufficient reasons that would permit this court to ascertain that its decision, in fact, was based upon permissible factors. Thus, we vacate the remand order entered by the district court. We wish to make clear,

however, that nothing in the above analysis is meant to indicate whether or not supplemental jurisdiction in this case is inappropriate; it remains the duty of the district court to consider the propriety of pendent jurisdiction "at every stage of the litigation," *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 619, after proper consideration of section 1367.

### Conclusion

We hold that the district court erred by failing to recognize that section 1367(c) provides the exclusive means by which supplemental jurisdiction over pendent claims may be declined if its assertion is permitted by sections 1367(a) and (b). Furthermore, to the extent that the district court relied on a ground for declining jurisdiction not codified in subsections (c)(1)–(3), the court committed clear error by failing to articulate how the "exceptional circumstances" and "compelling reasons" required by subsection (c)(4) were present. Finally, because the district court failed to provide reasons for its decision to decline supplemental jurisdiction, and the basis is not apparent from the record, we are unable to determine whether the court relied upon permissible grounds when it remanded the pendent claims.

For the above reasons, the writ of mandamus is **GRANTED,** and the remand order entered by the district court shall be **VACATED.**

LEAVY, Circuit Judge, dissenting:

I dissent.

I agree with the majority that unless the district court's order is clearly erroneous as a matter of law the writ of mandamus should not issue. I cannot agree with the majority that this court should conclude that the district court clearly erred because we cannot determine the exact ground upon which the court relied.

The district court's order to show cause said in part:

> Federal court jurisdiction over the state claims depends upon whether this Court exercises its discretion to retain supple-

---

**16.** *Cf. Imagineering,* 976 F.2d at 1309 (discussing § 1367(c)(3)).

mental claims. Accordingly, the Removing Party(ies) is hereby ordered to show cause in writing no later than June 14, 1993 why the Court should not exercise its discretion to remand the state claims to state court.

In its response to this Order, the Removing Party(ies) should take into account that the Supreme Court defined the parameters of a federal court's supplemental jurisdiction in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Under *Gibbs*, a federal court may exercise supplemental jurisdiction over state law claims only if the state and federal claims derive from a common nucleus of operative fact and are the types of claims the Court would ordinarily be expected to try together in one proceeding.

Even if these two conditions are met, however, a federal court has discretion to decline jurisdiction over the state law claims if, for instance, the state claims substantially predominate, the state claims involve novel or complex issues of state law, trial of the state and federal claims together is likely to result in jury confusion, or retention of the state claims requires the expenditure of substantial additional judicial time and effort. *Id.* at 726–27, 86 S.Ct. at 1139–40; *see also* 28 U.S.C. § 1367(c); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

The Removing Party(ies) should also be aware that this Court does not interpret the 1990 enactment of Section 1367 as restricting the discretionary factors set forth in *Gibbs*. Rather, this Court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdiction over supplemental parties, which was previously foreclosed by *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

The order to show cause included a discussion of the court's discretion to decline jurisdiction, which included the following possible grounds:

1. The state claims substantially predominate.

2. The state claims involve novel or complex issues of state law.

3. Trial of the state and federal claims together is likely to result in jury confusion, or

4. Retention of the state claims requires the expenditure of substantial additional judicial time and effort.

The record does not suggest that the court relied on any ground or factor not mentioned in its order to show cause. Because the court made no findings, we do not know which one or more of the grounds it relied on. On that basis alone, however, the majority concludes that the district court may have relied on a ground not enumerated in section 1367(c); that this was in error, and not only error, but *clear error* for the purpose of mandamus. I cannot join the majority's reasoning to the effect that our inability to find that the court did not err puts it in *clear error.*

Grounds one and two, suggested in the order to show cause, are mentioned in section 1367(c)(1) and (2). Ground three, jury confusion, in my view would be a sufficiently compelling reason for remand, as would the fourth ground, "the expenditure of substantial additional judicial time and effort."

The district court committed no error unless it relied on an unauthorized ground in exercising its discretion to remand. The court did not say that it relied on an unauthorized ground nor does the record tell us that it did, unless the majority means to hold that likely jury confusion or the expenditure of substantial additional judicial time are not exceptional circumstances in which compelling reasons for declining jurisdiction can be found. The fact that the district court does not interpret the 1990 enactment of section 1367 as restricting the discretionary factors set forth in *Gibbs* is of no moment unless we can say that the trial court exceeded its lawful authority wherever it may be found.

As for pendent jurisdiction in the sense of judicial power, the court in *Gibbs* said it need not be exercised in every case. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted).

According to *Gibbs,* the justification for pendent jurisdiction lies in considerations of judicial economy, convenience, and fairness to litigants. Congress chose to except from section 1367(a) those cases that were to be remanded under section 1367(c). In (a) it said, "Except as provided in subsection (b) and (c) ... in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims...." The sentence that Congress used to confer jurisdiction excepts from its scope those claims over which the district court may decline to exercise jurisdiction. The statute does not say that the court shall "exercise" jurisdiction. I find the majority's resort to footnote fourteen in *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993) puzzling at best. The footnote says, "The language in § 1367 expressly ... states that federal courts *shall* exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and *may* decline to exercise jurisdiction [as provided by § 1367(c) ]." (emphasis in original). I cannot find the words "shall exercise jurisdiction" in the statute. I find only "shall have supplemental jurisdiction," and that phrase is further clarified by the exceptions in subsection (c).

Just as the doctrine of supplemental jurisdiction itself is justified by considerations of judicial economy, convenience, and fairness to litigants, *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, so should a federal court "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon Univ.,* 484 U.S. at 350, 108 S.Ct. at 619. Congress did not use the word "discretion" in section 1367, but the Federal Courts Study Committee appointed by the Chief Justice at the direction of Congress in advocating the legislation said:

These supplemental forms of jurisdiction *which may be exercised in the discretion of the federal courts,* enable them to take full advantage of the rules on claim and party joinder to deal economically—in sin-

gle rather than multiple litigation—with matters arising from the same transaction or occurrence. Pendent and ancillary jurisdiction may be used with respect either to additional claims between parties already before the courts (as with compulsory counterclaims) or to claims bringing in new parties (as with impleader of a third-party defendant).

Report of the Federal Court Study Committee, at 47 (April 2, 1990) (emphasis added). The House Report that accompanied the final version of the statute explains the goal of section 1367(c):

[Section 1367(c) ] codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim. Subsection (c)(1)–(3) codifies the factors recognized as relevant under current law. Subsection (c)(4) acknowledges that occasionally there may exist other compelling reasons for a district court to decline supplemental jurisdiction, which the subsection does not foreclose a court from considering in exceptional circumstances.

H.R. No. 734, 101st Cong., 2d Sess. 29 (1990), *reprinted in* 1990 U.S.C.A.A.N. 6860, 6875. Thus, the majority puts us in conflict with other circuits. *See Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993) (Posner, J.) ("[T]he new statute is intended to codify rather than to alter the judge-made principles of pendent and pendent party jurisdiction[.]"); *Growth Horizons, Inc.,* 983 F.2d at 1284 ("In making its determination [whether to remand pursuant to section 1367(c) ], the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.' ") (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139); *Hays County Guardian v. Supple,* 969 F.2d 111, 125 (5th Cir.1992) (finding "exceptional circumstances" and "compelling reasons" under section 1367(c)(4) where "[a]djudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources").

Remanding the state claims is only one step beyond bifurcation of the trial which we so readily leave to the discretion of the trial court. *See, e.g., Hirst v. Gertzen,* 676 F.2d 1252, 1261 (9th Cir.1982) (bifurcation to avoid unnecessary jury confusion is within the sound discretion of the trial court). It may be that the effect of today's ruling will be less damaging than I fear because the district courts can achieve the goals of judicial economy, convenience, and fairness to litigants by bifurcation of the state claims when necessary.

Finally, I am concerned about the effect of granting a petition for a writ of mandamus in this case. If a district court decides that under the standards arrived at by the majority, it is bound to refuse remand, it may be subject to mandamus for failure to exercise its discretion if it wrongly decided that it had no discretion. If it remands, as in this case, it will be subject to mandamus if it is wrong in concluding that it has discretion. In any event, it will be subject to mandamus if it fails to make adequate findings or give sufficient reasons. My hope is that the *Bauman* factors will restrain us in granting petitions for a writ of mandamus. *See Bauman v. United States,* 557 F.2d 650, 654–55 (9th Cir.1977). At least future remand orders will not raise new and important problems or issues of law of first impression and therefore, we will have good reasons not to issue the writ.

Because the *Gibbs* standards survived the enactment of section 1367, I cannot say that the district court clearly erred in remanding the plaintiff's state law claims by applying the *Gibbs* standards. Under the clearly erroneous standard, we should not require the district court to persuade us that it is correct. Because I cannot conclude that the district court is wrong, I would deny the petition.