FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL ARROYO, JR.,
         *Plaintiff-Appellant,*

v.

CARMEN ROSAS,
         *Defendant-Appellee,*

and

A & G INTERPRISES, LLC, a
California Limited Liability
Company; DOES, 1–10,
         *Defendants.*

No. 19-55974

D.C. No.
2:18-cv-06338-
PSG-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted July 8, 2020
Pasadena, California

Filed December 10, 2021

Before:  Bobby R. Baldock,[*] Marsha S. Berzon, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

**SUMMARY**[**]

**Supplemental Jurisdiction**

The panel reversed the district court's order granting summary judgment to plaintiff on his claim under Title III of the Americans with Disabilities Act but declining to exercise supplemental jurisdiction over his claim under California's Unruh Civil Rights Act.

The panel held that, because any violation of the ADA is automatically a violation of the Unruh Act, the district court's summary judgment ruling effectively dictated the outcome of plaintiff's Unruh Act claim as well.  The panel held that the district court abused its discretion in nonetheless declining to exercise supplemental jurisdiction over the Unruh Act claim under 28 U.S.C. § 1367(c)(4), which permits a district court to decline to exercise supplemental jurisdiction over a claim if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

According to the district court, recent changes in California law had made it much more difficult to file Unruh Act claims in state court, leading to a wholesale shifting of such cases to the federal courts. The district court ruled that retaining jurisdiction over the Unruh Act claim would allow plaintiff to evade the California requirements, contrary to the interest in federal-state comity.

The panel agreed with the district court that the extraordinary situation created by the unique confluence of California rules involved here, pairing a damages remedy with special procedural requirements aimed at limiting suits by high-frequency litigants, presented "exceptional circumstances" that authorized consideration, on a case-by-case basis, of whether the principles of judicial economy, convenience, comity, and fairness underlying the pendent jurisdiction doctrine provided "compelling reasons" that warranted declining supplemental jurisdiction. However, because the district court effectively completed its adjudication of this case before it considered the question of supplemental jurisdiction, the interests in judicial economy, convenience, comity, and fairness all overwhelmingly favored retaining jurisdiction and entering the foreordained judgment on the Unruh Act claim. The panel therefore reversed and remanded.

## COUNSEL

Russell C. Handy (argued) and Dennis J. Price II, Potter Handy LLP, San Diego, California, for Plaintiff-Appellant.

James S. Link (argued), Baraban & Teske, Pasadena, California; Stephen E. Abraham, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

COLLINS, Circuit Judge:

Rafael Arroyo, Jr., is a paraplegic who uses a wheelchair for mobility. Arroyo filed suit against Carmen Rosas, the owner of the Gardena Main Plaza Liquor store in Gardena, California, alleging that the store's premises contained barriers that denied him full and equal access, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., and California's Unruh Civil Rights Act ("Unruh Act"), CAL. CIV. CODE § 51. The district court granted summary judgment to Arroyo on his ADA claim, concluding that the undisputed evidence established all of the elements of that claim. Because any violation of the ADA is automatically a violation of the Unruh Act, *see* CAL. CIV. CODE § 51(f), the district court's summary judgment ruling effectively dictated the outcome of Arroyo's Unruh Act claim as well. Nonetheless, the district court concluded that "extraordinary circumstances' and "compelling reasons" existed under 28 U.S.C. § 1367(c)(4) to decline supplemental jurisdiction over Arroyo's Unruh Act claim. Specifically, the district court noted that recent changes in California law had made it much

more difficult to file Unruh Act claims in state court and that these changes had led to a wholesale shifting of such cases to the federal courts, where they now made up nearly a quarter of the district court's entire civil docket. Retaining jurisdiction over the Unruh Act claim here, the court concluded, would allow Arroyo to evade these California requirements, contrary to the interest in federal-state comity. Accordingly, the district court dismissed Arroyo's Unruh Act claim without prejudice to refiling it in state court. Arroyo appealed.

We agree with the district court that the extraordinary situation created by the unique confluence of California rules involved here, which has led to systemic changes in where such cases are filed, presents "exceptional circumstances" that authorize consideration, on a case-by-case basis, of whether the "'principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine'" warrant declining supplemental jurisdiction. *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (citation omitted). However, because the district court effectively completed its adjudication of this entire case—including the Unruh Act claim, whose outcome was dictated by the court's ruling on the ADA claim—*before* it considered the question of supplemental jurisdiction, the interests in judicial economy, convenience, comity, and fairness at *that* point all overwhelmingly favored retaining jurisdiction and entering the foreordained judgment on the Unruh Act claim. The district court therefore abused its discretion in declining supplemental jurisdiction over the Unruh Act claim in this particular case. Consequently, we reverse and remand.

# I

The district court's decision can only be understood against the backdrop of recent changes in California law governing Unruh Act claims. We therefore begin with an overview of those changes and their impact on the California statutory scheme, as evidenced by the large increase in filings in the federal courts, and we then summarize the procedural history of this case and the district court's ruling.

## A

"[I]n order to address the major areas of discrimination faced day-to-day by people with disabilities," Congress adopted, in the ADA, "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). In particular, § 302(a) of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id*. § 12182(a). Section 308(a) of the ADA provides a private cause of action to enforce this prohibition, *see id*. § 12188(a), but it limits the available relief to the remedies set forth in § 204 of the Civil Rights Act of 1964, namely, "preventive relief, including . . . a permanent or temporary injunction," *id*. § 2000a-3(a); *see also Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en

banc) (noting that "injunctive relief . . . is the only relief available to private plaintiffs under the ADA").[1]

California's Unruh Act likewise generally prohibits the denial of "the full and equal accommodations, advantages, facilities, privileges, or services in [any] business establishment[]" based on "disability" (as well as a number of other enumerated grounds). CAL. CIV. CODE § 51(b). The Unruh Act also contains a specific provision stating that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." *Id*. § 51(f). As with the ADA, a "person aggrieved" by a violation of the Unruh Act may file a civil action seeking "preventive relief, including . . . a permanent or temporary injunction." *Id*. § 52(c)(3). However, in contrast to the ADA, the private civil remedy for Unruh Act violations also allows injured persons to recover "actual damages," as well as "any amount that may be determined by a jury . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." *Id*. § 52(a); *see also id*. § 55.56(a); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Because, as noted, every violation of the ADA in California is automatically a violation of the Unruh Act, the net practical consequence is to create a state law cause of action that permits, for California-based ADA claims, a damages remedy that is not available under the ADA.

---

[1] The ADA also allows the Attorney General to bring a civil enforcement action in certain circumstances, *see* 42 U.S.C. § 12188(b)(1)(B), and in such a suit, the court may award appropriate "monetary damages to persons aggrieved when requested by the Attorney General," *id*. § 12188(b)(2)(B).

In 2012, the California Legislature enacted new provisions to address what it perceived to be abuse of the Unruh Act by "a very small number of plaintiffs' attorneys." Act of Sept. 19, 2012, ch. 383, § 24, 2012 Cal. Stat. 3843, 3871. As the Legislature explained in the uncodified section of the amending statute that explained its purpose, some attorneys were abusing the Unruh Act by demanding "quick money settlement[s]" from California business owners "without seeking and obtaining actual repair or correction of the alleged violations on the site." *Id*. Such "'pay me now or pay me more' demands" were being "used to scare businesses into paying quick settlements that only financially enrich[ed] the attorney and claimant and d[id] not promote accessibility either for the claimant or the disability community as a whole." *Id*. Accordingly, the Legislature added a new provision to the California Civil Code that, with respect to "construction-related accessibility claim[s]" under the Unruh Act and related state statutes, generally prohibited up-front requests for money in pre-litigation demand letters sent by attorneys to business owners. CAL. CIV. CODE § 55.31(b). The Legislature also imposed heightened pleading requirements applicable only to such claims. CAL. CIV. PROC. CODE § 425.50(a) (2013). Under these special pleading rules, a complaint must include: (1) an "explanation of the specific access barrier or barriers the individual encountered"; (2) the "way in which the barrier denied the individual full and equal use or access, or [the way] in which it deterred the individual, on each particular occasion"; and (3) the "date or dates of each particular occasion on which the claimant encountered the specific access barrier, or on which he or she was deterred." *Id*. Finally, "[a]ny complaint alleging a construction-related accessibility claim" must "be verified by the plaintiff." *Id*. § 425.50(b).

In 2015, the California Legislature again imposed additional procedural requirements on "construction-related accessibility claims" in order to address what it believed was continued abuse by "high-frequency litigant[s]." CAL. CIV. PROC. CODE § 425.55(a)(2), (b). In the codified legislative findings supporting these new requirements, the Legislature noted that "54 percent[] of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties." *Id* § 425.55(a)(2). These lawsuits frequently targeted "small businesses on the basis of boilerplate complaints" to pursue "quick cash settlements rather than correction of the accessibility violation." *Id*. Under the new pleading requirements, any "construction-related accessibility claim" (other than one alleging physical injury or property damage) that is filed by a plaintiff who is a "high-frequency litigant" must disclose: (1) that the plaintiff is a high-frequency litigant; (2) how many complaints the plaintiff has filed in the prior 12 months; (3) the reason the plaintiff was in "the geographic area of the defendant's business"; and (4) why the plaintiff "desired to access the defendant's business." CAL. CIV. PROC. CODE § 425.50(a)(4)(A). A "high-frequency litigant" plaintiff was generally defined as a "plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." *Id*. § 425.55(b)(1). In addition, the Legislature imposed a $1,000 additional filing fee—over and above the ordinary civil filing fees—for each new case filed by a plaintiff who is a high-frequency litigant. CAL. GOV'T CODE § 70616.5.

The extra $1,000 filing fee, of course, only applies to actions filed in California state court. The parties here

assume that the heightened pleading requirements also do not apply in federal court, and they have not cited to us any district court decision that has applied them in federal court. We will therefore assume, without deciding, that this additional premise is correct. The resulting differences between state court and federal court have produced significant consequences for the filing of ADA-based Unruh Act claims. Given the substantive overlap between the ADA and the Unruh Act—as noted earlier, every violation of the ADA in California is automatically a violation of the Unruh Act—the significant expense and burden of California's newly imposed rules for "construction-related accessibility claim[s]" can be avoided by pairing the Unruh Act claim with a parallel federal ADA claim and then filing the suit in federal court. It is therefore unsurprising that the record shows that the number of ADA cases filed in the U.S. District Court for the Central District of California jumped from 419 (3 percent of all civil actions filed) in 2013 to 2,720 (18 percent of civil cases) in 2018. Indeed, the trend continued in fiscal year 2019, when the number of ADA cases in the Central District increased to 3,374 (nearly 22 percent of civil cases). *See* U.S. Dist. Ct., C.D. Cal., *Annual Report of Caseload Statistics, Fiscal Year 2019* at 8, available at https://www.cacd.uscourts.gov/sites/default/file s/CACD_FY2019_Annual_Report.pdf.

**B**

Plaintiff Raphael Arroyo, Jr. filed the instant action in the U.S. District Court for the Central District of California on July 23, 2018. Within the preceding 12 months, he had filed at least 38 ADA cases, meaning that he would have been classified as a "high-frequency litigant" had he filed this case in California state court. CAL. CIV. PROC. CODE § 425.55(b)(1). But because he filed this action in federal

court, he avoided the extra $1,000 filing fee and the special pleading requirements that California law imposes on such high-frequency litigants.

According to the complaint, Arroyo is "a paraplegic who cannot walk and who uses a wheelchair for mobility." He alleges that, earlier that same month, he visited the Gardena Main Plaza Liquor store, located in Gardena, California. During that visit, he encountered several barriers to equal access that resulted from the store's failure to comply with various requirements of the ADA. Specifically, Arroyo alleged that the store's handicapped parking space was not van-accessible and that the store's transaction counter was too high. Arroyo also alleged that the store's aisles were too narrow and were obstructed by merchandise, although he stated that he "did not personally confront" these particular barriers. Based on these allegations, he asserted two causes of action against Carmen Rosas, the owner of the store: (1) a claim for injunctive relief under the ADA; and (2) a claim for monetary damages and injunctive relief for the ADA-based violations of the Unruh Act.[2]

About a year after filing this action, Arroyo moved for summary judgment. Rosas, who was proceeding pro se, unsuccessfully sought an extension of time to file her opposition to Arroyo's motion, and she thereafter failed to file any response by the court's unextended deadline. In August 2019, the district court granted Arroyo summary

---

[2] Arroyo's complaint also named as a defendant "A & G Interprises, LLC," the entity that allegedly owned the land on which the store sits. The district court subsequently dismissed A & G from the suit without prejudice on the grounds that Arroyo had failed to serve process on A & G and A & G no longer owned the property. Arroyo does not challenge A & G's dismissal on appeal.

judgment against Rosas on his ADA claim and declined jurisdiction over his pendent Unruh Act claim.

The district court held that Arroyo had demonstrated standing to bring an ADA claim against Rosas inasmuch as he presented uncontested evidence that he had "visited the [s]tore in July 2018 and could not access it due to the parking, transaction counter, and aisle barriers" and that he intended to visit the store again in the future. Addressing the merits of Arroyo's ADA claim, the district court recited the elements that Arroyo needed to establish, and the court properly concluded that each was supported by the uncontested evidence. As a threshold matter, Rosas's store is a "place of public accommodation" covered by the Act, *see* 42 U.S.C. § 12181(7)(E) (any "sales . . . establishment," such as a "grocery store," that is a "private entit[y]" is deemed to be a place of "public accommodation[]" if its "operations . . . affect commerce"), and Rosas is a "person who owns . . . or operates" that "place of "public accommodation," *id*. § 12182(a). Arroyo's paraplegia is a "disability" within the meaning of the ADA, *see id*. § 12102, and he would be "discriminated against on the basis of [that] disability," *id*. § 12182(a), if he showed that Rosas "fail[ed] to remove architectural barriers . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv); *see also Chapman*, 631 F.3d at 945.

Reviewing the uncontested evidence on this latter issue, the district court concluded that the barriers that Arroyo identified in the store, "including the uneven parking access aisle with high slopes, the 55-inch transaction counter, and the paths of travel in the [s]tore that measured between 12 and 30 inches, created 'architectural barriers'" within the meaning of the ADA, and that "Rosas can readily remove these types of barriers." *See* 28 C.F.R. § 36.304(a) (removal

of barriers is "readily achievable" when it is "easily accomplishable and able to be carried out without much difficulty or expense"); *id.* § 36.304(b) ("[e]xamples of steps to remove barriers include . . . [r]epositioning shelves" and [c]reating designated accessible parking spaces"). Accordingly, the district court granted summary judgment to Arroyo on his ADA claim, and the court entered judgment enjoining Rosas "to provide compliant accessible parking, sales counters, and merchandise aisles" at her store.

Having granted Arroyo summary judgment on his federal ADA claim, the court nonetheless declined to exercise supplemental jurisdiction over his state law Unruh Act claim. The court held that, due to "exceptional circumstances," there were "compelling reasons for declining jurisdiction" under 28 U.S.C. § 1367(c)(4). Specifically, the court noted that California's special filing and pleading requirements for "construction-related accessibility claims" reflected the state Legislature's "desire to limit the financial burdens California's businesses may face" from "claims for statutory damages under the Unruh Act." The district court concluded that if it were to retain jurisdiction, it would allow Arroyo to "evade[]" the special restrictions that California law applied to Unruh Act claims asserted by "high-frequency litigants" such as him. The court further noted that, since California's adoption of these additional restrictions, the number of such cases filed in the Central District "has skyrocketed both numerically and as a percentage of total civil filings." The district court concluded that the resulting situation presented "'exceptional circumstances' and 'compelling reasons' that justify exercising the Court's discretion to decline supplemental jurisdiction over plaintiff's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4)."

Turning to the discretionary factors identified in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the district court acknowledged that "it would be more convenient and efficient for the ADA claim and the state law claim based on the same ADA violations to be litigated in one suit," but the court concluded that this interest was outweighed by "considerations of comity" and California's "strong interest" in ensuring that litigants seeking monetary damages for such claims under the Unruh Act did not "claim these state law damages in a manner inconsistent with the state law's requirements."

Arroyo timely appealed the district court's judgment dismissing his Unruh Act claim without prejudice. *See* FED. R. APP. P. 4(a)(2). Rosas has not cross-appealed the judgment on the ADA claim. We have jurisdiction under 28 U.S.C. § 1291.

## II

Under the supplemental jurisdiction statute enacted in 1990, a district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction," subject to certain exceptions, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because Arroyo's Unruh Act claim and his ADA claim both "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding," they form part of the "same case or controversy" for purposes of § 1367(a). *Trustees of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (citations and internal quotation marks omitted). Accordingly, the district court was required to assert

supplemental jurisdiction under § 1367(a) over Arroyo's Unruh Act claim, unless an exception applies under § 1367(b), § 1367(c), or another "Federal statute." *See* 28 U.S.C. § 1367(a); *see also Executive Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1555–56 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).[3] Because § 1367(b) limits supplemental jurisdiction only in cases in which the district court's original jurisdiction was "founded solely" on diversity, *see* 28 U.S.C. § 1367(b), it does not apply to Arroyo's suit, in which the district court had federal question jurisdiction over the ADA claim under 28 U.S.C. § 1331. And given that the parties have not identified any other relevant federal statute, the district court's declination of supplemental jurisdiction can be justified, if at all, only under § 1367(c). *See Executive Software*, 24 F.3d at 1556.

Section 1367(c) permits a district court to "decline to exercise supplemental jurisdiction over a claim" in four enumerated circumstances:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[3] As the Supreme Court has noted, § 1367 does not eliminate the obligation "not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the] Court applies." *International Coll. of Surgeons*, 522 U.S. at 174. No issue of abstention has been raised here.

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*. § 1367(c).    The district court invoked the fourth exception in dismissing Arroyo's pendent Unruh Act claim, and we review that decision for abuse of discretion. *See Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1165 (9th Cir. 2002).[4]

A district court's decision to invoke § 1367(c)(4) entails a two-part inquiry.  First, the district court must "articulate why the circumstances of the case are exceptional" within the meaning of § 1367(c)(4). *Executive Software*, 24 F.3d at 1558; *see also San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (district court must provide an explanation of its reasons if it invokes § 1367(c)(4), but not if it invokes § 1367(c)(1)–(3)). Second, in determining whether there are "compelling reasons for declining jurisdiction" in a given case, the court should consider what "'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine'" articulated in *Gibbs*. *See International Coll. of Surgeons*, 522 U.S. at 172–73 (citation

---

[4] On appeal, Rosas contends that we can alternatively uphold the dismissal of the Unruh Act claim under § 1367(c)(1) and § 1367(c)(2), but we disagree.  As an initial matter, we cannot uphold the district court's decision based on discretionary grounds it did not invoke. *See Executive Software*, 24 F.3d at 1561.  But in any event, as our subsequent analysis will make clear, the outcome of the Unruh Act claim in this case is obvious in light of the district court's ADA ruling, and that fact vitiates any ground for invoking those other subsections.

omitted); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (referring to these considerations as the "*Gibbs* values"). These two inquiries are "not particularly burdensome." *Executive Software*, 24 F.3d at 1558. "A court simply must articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide[s] compelling reasons for declining jurisdiction in such circumstances." *Id*. We separately address these two inquiries.

## A

The district court's principal justification for declining supplemental jurisdiction was that the distinctive configuration of California-law rules—which pair a damages remedy with special procedural requirements aimed at limiting suits by high-frequency litigants—would be rendered ineffectual if the district court were to exercise supplemental jurisdiction. We hold that the district court did not abuse its discretion in concluding that, for this reason, this case presents "exceptional circumstances" within the meaning of § 1367(c)(4).

Our caselaw offers little guidance as to what might constitute the sort of "exceptional circumstances" that would permit an exercise of case-specific discretion to decline supplemental jurisdiction under § 1367(c)(4). In *Executive Software*, we emphasized that the circumstances should be "quite unusual" and should not rest "solely" on routinely occurring conditions such as "docket congestion." 24 F.3d at 1558, 1560 n.15; *cf. Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344 (1976) (holding that otherwise properly removed diversity case could not be remanded simply because the court had a "heavy docket"; "the right to remove has never been dependent on the state

of the federal court's docket").  Without purporting to limit the variety of other circumstances that might be deemed sufficiently "exceptional" to warrant consideration of declining supplemental jurisdiction, *see*, *e.g.*, *Voda v. Cordis Corp.*, 476 F.3d 887, 900 (Fed. Cir. 2007) (holding that potential impact of retaining supplemental jurisdiction on U.S. treaty obligations was an "exceptional circumstance" under § 1367(c)(4)), we think that, at the very least, that phrase extends to highly unusual situations that threaten to have a substantial adverse impact on the core *Gibbs* values of "'economy, convenience, fairness, and comity.'" *International Coll. of Surgeons*, 522 U.S. at 172–73 (citation omitted).  That is the case here.

As the district court recognized, the recent confluence of several California-law rules have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity.  Congress crafted the ADA so that the only remedy available in private suits is prospective injunctive relief, and damages are only available in suits that the Government elects to bring.  *See supra* at 6–7 & n.1.  As it is entitled to do, California chose a different route—it created, in the Unruh Act, a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action.  Not only are "actual damages" available, but also an additional award of up to treble damages, and the total monetary award may not be less than $4,000 per occasion. *See* CAL. CIV. CODE § 52(a); *id*. § 55.56(a), (f).  In response to the resulting substantial volume of claims asserted under the Unruh Act, and the concern that high-frequency litigants may be using the statute to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others, California chose not to

reform the underlying cause of action but instead to impose filing restrictions designed to address that concern.  Because these procedural restrictions apparently have not been applied in federal court, *see supra* at 9–10, the consequence of these various laws, taken together, was to make it very unattractive to file such Unruh Act suits in state court but very attractive to file them in federal court.  Given that the Unruh Act borrows the ADA's substantive standards as the predicate for its cause of action, a federal forum is readily available simply by pairing the Unruh Act claim with a companion ADA claim for injunctive relief.  *See* 28 U.S.C. § 1331.   As the statistics cited by the district court demonstrate,[5] the apparent result has been a wholesale shifting of Unruh Act/ADA cases into the U.S. District Court for the Central District of California (and perhaps the other California federal courts as well).

Arroyo quibbles with the precise statistics cited by the district court, but he has provided no basis to doubt the overall pattern they reveal and, indeed, he does not dispute that "a steadily increasing number of ADA/Unruh cases [are] being filed in federal court."  He contends, however, that the district court's inference that the cases were filed in federal

---

[5] "According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on [Unruh Act construction-related accessibility claims] were in effect, there were 419 ADA cases filed in the Central District, constituting 3 percent of the civil actions filed.  Filings of ADA cases increased from 928 (7 percent of civil cases) in 2014, the year before the imposition of the extra $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 (10 percent of civil cases) in 2016, the first full year of those requirements.  The number and percentage of such cases filed in the Central District have increased each year since California enacted the limitations on high-frequency litigants, reaching 1,670 (12 percent of civil cases) in 2017, 2,720 (18 percent of civil cases) in 2018, and 1,868 cases (24 percent of civil cases) in the first six months of 2019."

court to avoid the state's special requirements is unwarranted, because the record contains no statistics showing whether there is a "correlated decrease in ADA/Unruh filings in state court." Even without that data, we think that the district court had an ample basis to reasonably infer that the post-2015 surge in ADA filings in the Central District was caused by California's 2015 adoption of new procedural requirements that placed substantial burdens on filing such cases in state court.[6]

The district court properly observed that, due to the shift of ADA-based Unruh Act cases to federal court, California's unique configuration of laws in this area did not accomplish the Legislature's goal of simultaneously providing damages relief for ADA violations while "limit[ing] the financial burdens California's businesses may face for claims for statutory damages under the Unruh Act." Instead, as the district court explained, Unruh Act plaintiffs have "evaded

---

[6] Although it is not necessary to rely on it, we note that the available data from the California Commission on Disability Access confirms the dramatic shift of disability-related cases from state to federal court. Under California Civil Code § 55.32(b)(1), California attorneys must serve the Commission with a copy of any complaint filed in any court (state or federal) asserting a construction-related accessibility claim. In its most recent report to the Legislature, the Commission stated that, since 2015, it "has observed a steady decrease in the number of state complaints received and significant increases in the number of federal complaints received." *See* Cal. Comm'n on Disability Access, *2019 Annual Report to the Legislature*, Appendix A, available at https://www.dgs.ca.gov/Resources/Legislative-Reports. Indeed, the Commission's data show that in 2015, more state complaints were received than federal complaints (1,240 state complaints versus 1,083 federal complaints), but by 2019, the number of state complaints had dropped so dramatically that the ratio of federal to state complaints was now more than 10:1 (311 state complaints versus 3,211 federal complaints). *Id.*

these limits" by filing in a federal "forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." In short, the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded.

These circumstances are "exceptional" in any meaningful sense of the term. *See Exceptional*, WEBSTER'S THIRD NEW INT'L DICTIONARY 791 (1981) ("being out of the ordinary: uncommon, rare"). And failing to recognize them as exceptional would improperly ignore the very substantial threat to federal-state comity that this overall situation presents. Comity principles counsel against, for example, "step[ping] on the toes of the state courts" by imposing gratuitous and unnecessary burdens on them. *See Sullivan v. Conway*, 157 F.3d 1092, 1095 (7th Cir. 1998) (holding that district court properly retained jurisdiction over pendent state claims rather than "prolonging this doomed litigation by sending it back to the state court to be dismissed there"). Here, we are presented with a converse comity concern— namely, that retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms. As noted earlier, the California Legislature recognized that its creation of a damages remedy for "construction-related accessibility claims" had imposed significant burdens on small businesses and created potential incentives for plaintiffs and their counsel to seek monetary settlements at the expense of forward-looking relief that might benefit the general public. *See supra* at 7–9. The Legislature could have chosen to eliminate the damages remedy in whole or in part, but it instead imposed a set of special procedural limitations designed to balance its objectives of allowing monetary

relief, avoiding undue burdens on businesses, and realigning undesirable incentives for plaintiffs. But as the district court recognized, the ready shifting of ADA-based Unruh Act cases to federal court has created "an 'end-[run] around' California's requirements," thereby allowing a wholesale evasion of those critical limitations on damages relief under the Unruh Act. The district court did not abuse its discretion in concluding that this extraordinary situation threatens unusually significant damage to federal-state comity and presents "exceptional circumstances" within the meaning of § 1367(c)(4).

Arroyo argues that it was "wholly improper" for the district court to decline supplemental jurisdiction based on the asserted desire to ease docket congestion. Although the district court did note the "burden the ever-increasing number of such cases poses to the federal courts," we do not read its decision as resting on an improper desire to avoid docket burdens. Rather, the district court rested its decision squarely on the comity-based concerns that California's policy objectives in this area were being wholly thwarted and its courts were being deprived of their crucial role in carrying out the Legislature's reforms of the Unruh Act. The *mechanism* by which that frustration of California's goals occurred was the wholesale shifting of cases from state to federal court, and the district court therefore can hardly be faulted for noting the federal-court burdens that resulted as a collateral consequence. But that does not vitiate the district court's proper reliance on the exceptional comity-based concerns presented here. Nothing in the district court's order supports the view that the court relied on an impermissible

purpose to remand state law claims "solely to ease docket congestion." *Executive Software*, 24 F.3d at 1560 n.15.[7]

In light of the foregoing, we have little difficulty concluding that the district court did not abuse its discretion in concluding that the situation presented here involves "exceptional circumstances" within the meaning of § 1367(c)(4).

**B**

Given that exceptional circumstances were presented, the remaining question is whether the district court abused its discretion in making a case-specific judgment that there are "compelling reasons" for declining supplemental jurisdiction in *this* case.  As noted earlier, that question requires a consideration of the so-called "*Gibbs* values," *Acri*, 114 F.3d at 1001, namely, "judicial economy, convenience[,] . . . fairness to litigants," and "comity." *Gibbs*, 383 U.S. at 726.  Given the very late stage at which the district court declined supplemental jurisdiction in this case, these values overwhelmingly favored *retaining* jurisdiction over Arroyo's Unruh Act claim, and the district court therefore abused its discretion in dismissing that claim.

---

[7] The other cases cited by Arroyo are inapposite. *Thermtron* did not involve discretionary supplemental jurisdiction at all; instead, the Court there merely held that *mandatory* diversity jurisdiction over a case may not be declined simply "because the district court considers itself to busy to try it."  423 U.S. at 344. *Northern Cheyenne Tribe v. Adsit*, 668 F.2d 1080, 1088 (9th Cir. 1982), likewise did not address supplemental jurisdiction, but rather abstention under *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976).

## 1

From the perspective of judicial economy and convenience, it makes no sense to decline jurisdiction, as the district court did, over a pendent state law claim that that court has effectively already decided. Under the plain language of California Civil Code § 51(f), a violation of the ADA is automatically, without more, a violation of the Unruh Act. *See supra* at 7. Accordingly, the district court's ADA ruling *already* established that Rosas has violated the Unruh Act, and it identified the specific respects in which she did so.

As to remedy, Arroyo requested the appropriate statutory minimum damages award under the Unruh Act. Such damages are available under that Act if the plaintiff "personally encountered the violation on a particular occasion" or if he or she was deterred "from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion." *See* Cal. Civ. Code § 55.56(a), (b), (d)(1). "A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." *See id*. § 55.56(c); *see also Mundy v. Pro-Thro Enters.*, 121 Cal. Rptr. 3d 274, 278 (Cal. App. Dep't Super. Ct. 2011) (trial court properly denied statutory damages where plaintiff offered no evidence "showing that the violation caused him difficulty, discomfort, or embarrassment"). Given Rosas's failure to oppose Arroyo's summary judgment motion, the material facts that Arroyo "adequately supported" in establishing his claims for relief may be taken as "admitted to exist without controversy," and his damages award on summary judgment would be calculated accordingly. *See* C.D. Cal. Local Civ. R. 56-3. Here, the district court's

findings in its summary judgment order establish, without more, that Arroyo is entitled to a $4,000 award based on his actual encounter with the store's barriers during his visit in July 2018, which caused him the requisite injury. To obtain the minimum statutory award of $4,000, Arroyo did not need to quantify the damages associated with his undisputed showing, at summary judgment, that he had suffered, as he put it, "difficulty, discomfort[,] inconvenience, embarrassment, anxiety and frustration." *See Molski*, 481 F.3d at 731 ("The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000.").

The only remaining question is whether Arroyo is entitled to a second award of statutory damages based on his claim that he was also deterred from visiting the store in the future. This issue was not resolved by the district court's findings. The district court concluded, in its standing analysis, that "the barriers deter [Arroyo] from patronizing" the store, which Arroyo "intends" to visit "in the future." However, in reaching this conclusion, the court did not address whether Arroyo had shown that he "intended to use [the store] on a *particular* occasion" and "was deterred from accessing" it "on [that] *particular* occasion." *See* CAL. CIV. CODE § 55.56(d)(1) (emphasis added). Nonetheless, this sole remaining issue presents little difficulty. Arroyo's declaration in support of his summary judgment motion manifestly made no showing as to this particularity requirement, because it merely asserted that, if the barriers "are removed, [he] plan[s] to visit the [s]tore on a regular basis or whenever the need arises." That is enough to warrant prospective injunctive relief under the ADA, but it is not enough to show that he was actually deterred on a "particular" occasion. Accordingly, Arroyo is not entitled to

a second award of statutory damages, and his total Unruh Act damages are $4,000.

Given that the correct disposition of Arroyo's Unruh Act claim follows obviously and ineluctably from the findings that the district court has already made, it would be a sheer waste of time and resources to require that claim to be refiled in state court.  *See*, *e.g.*, *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (stating that judicial economy favors retaining supplemental jurisdiction over remaining state claims, even when all federal claims have been dismissed, if, *inter alia*, "it is obvious how the claims should be decided").  The values of judicial economy and convenience thus weigh very heavily in favor of retaining jurisdiction and adding, to an amended summary judgment order, the few simple sentences needed to dispose of the Unruh Act claim.  *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("If the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court."); *cf. Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (no abuse of discretion declining supplemental jurisdiction under § 1367(c)(3) when ADA claims had been *dismissed* and state law claims might raise additional issues).  And "federal-state comity is certainly not served by sending back to state court" litigation in which the result is wholly foreordained.  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999).

## 2

Rosas nonetheless insists that the district court properly dismissed the Unruh Act claim on comity grounds in order to prevent evasion of California's procedural strictures.  The problem is, once again, that the district court waited too late in the litigation to invoke this interest.  If the district court

had declined supplemental jurisdiction over Arroyo's Unruh Act claim at the *outset* of the litigation, it might then still have been possible to further California's interest in cabining Unruh Act damages claims through the imposition of heightened *pleading* requirements and a substantial up-front filing fee. But once the district court granted summary judgment upholding the merits of Arroyo's ADA claim (and, perforce, his Unruh Act claim), it was no longer possible to satisfy the interests underlying California's various devices for pre-screening Unruh Act claims. Having already granted summary judgment in Arroyo's favor, the district court by that point had itself identified the specific "specific access barrier or barriers the individual encountered," the "way in which the barrier denied the individual full and equal use or access," and the particular date "on which the claimant encountered the specific access barrier." CAL. CODE CIV. P. § 425.50(a).

Moreover, when the court granted summary judgment, it knew that Arroyo was a "high-frequency litigant," but nothing meaningful could be done with that information at that point. To be sure, Arroyo had not been made to disclose in his complaint the reason why he was in "the geographic area of the defendant's business" or why, specifically, he "desired to access the defendant's business." CAL. CIV. PROC. CODE § 425.50(a)(4)(A)(iii)–(iv). But those subjects could have been explored in discovery by Rosas, and if they had led to any grounds for defense, she could have raised them. There is no point in exploring such questions when the merits of the claims have already been litigated and resolved. At this point, the only thing that would be accomplished by sending the Unruh Act claim to state court—other than burdening the state court with pointless make-work—would be to dun Arroyo for the $1,000 special filing fee for high-frequency litigants as well as the other

standard filing fees. *See* CAL. GOV'T CODE § 70616.5. In the present circumstances, that would amount to little more than a gratuitous tax on the award to which Arroyo has already established he is entitled.[8]

Finally, there is no sense in which the district court's dismissal can be said to further the interest in ensuring that the federal courts not be burdened with combined ADA/Unruh Act cases that would *not* have survived California's up-front screening mechanisms. Any burden from *this* particular litigation has already been borne, and all that remains is the relatively ministerial task of entering judgment on the foreordained Unruh Act claim. As noted earlier, we are sympathetic to the district court's desire to address the unique burdens that flow from the extraordinary confluence of California rules concerning Unruh Act claims. But it is simply too late to undo the now-sunk costs already incurred by litigating this matter to its now-inevitable conclusion.

Considering all of the *Gibbs* values, we hold that the district court abused its discretion in declining supplemental jurisdiction over Arroyo's Unruh Act claim under § 1367(c)(4).

---

[8] We attach no weight to Arroyo's subjective motivation for preferring a federal forum over a state forum. *Cf. Wheeler v. City & County of Denver*, 229 U.S. 342, 351 (1913) ("[T]he cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are immaterial."). The weighing of the *Gibbs* values is not an effort to ascertain whether the parties are operating with admirable subjective motives in the case at hand. Rather, the focus is on whether the *consequences* of either retaining or declining supplemental jurisdiction in a given case will promote the values of "'economy, convenience, fairness, and comity.'" *Executive Software*, 24 F.3d at 1554 (citation omitted).

## III

We reverse the district court's dismissal of Arroyo's Unruh Act claim and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**