**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAFAEL ARROYO, Jr., | No. 22-55182 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-00594-FLA-JEM |
| v. | |
| ROBERT GOLBAHAR, in individual and representative capacity as trustee of the Amanda Pavie Golbahar Childs Trust, dated January 28, 2010, and of the Alexis Margaux Golbahar Childs Trust, dated January 28, 2010, | MEMORANDUM* |
| Defendant-Appellee, | |
| and | |
| NICK BHANJI; DOES, 1-10, | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted January 13, 2023
Pasadena, California

Before: CALLAHAN, R. NELSON, and H.A. THOMAS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge H.A. THOMAS.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Rafael Arroyo Jr. appeals the district court's denial of relief under California's Unruh Civil Rights Act (UCRA) and grant of summary judgment on one of his claims under the Americans with Disability Act (ADA). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**A.**

Arroyo filed an action under the ADA and UCRA alleging he encountered access barriers in the parking lot of Rainbow Cleaners. The district court granted summary judgment to Arroyo with regard to liability but denied summary judgment with regard to whether the alteration was readily achievable. Thereafter, Defendants corrected the alleged barriers, and the district court vacated its earlier grant of summary judgment. In response, Arroyo then alleged that the parking space's dimensions did not comply with the 2010 ADA Accessibility Guidelines (ADAAG) Standards, and further alleged for the first time that the parking lot had a noncompliant gradient. The district court denied summary judgment with regard to whether the parking space's dimensions complied with the ADAAG Standards, but sua sponte granted summary judgment with regard to the newly raised gradient issue, finding that it was outside the scope of the complaint. Prior to trial, Arroyo conceded that the dimensions complied with ADAAG Standards. The district court dismissed as moot the alleged ADA claims after the parties agreed that alleged barriers were remedied. Exercising supplemental jurisdiction, the district court held

2

a one-day bench trial and denied Arroyo recovery under UCRA because he failed to establish that he had a bona fide intent to use Rainbow Cleaners' services.

**B.**

Following a bench trial, "[f]indings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see also Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 (9th Cir. 2004). We "reverse only if the district court's findings are clearly erroneous to the point of being illogical, implausible, or without support in inferences from the record." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020). We review de novo the district court's conclusions of law. *See Lentini*, 370 F.3d at 843.

**C.**

Arroyo has not shown that the district court erred in determining that he lacked a bona fide intent to use Rainbow Cleaners and in denying him recovery on his UCRA claim.

**1.** Although we have stated that "any violation of the ADA necessarily constitutes a violation of the [UCRA]," *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007), *see also Arroyo v. Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021), we have yet to directly address recent California case law instructing that UCRA

plaintiffs must show "a bona fide intent" to use the defendant's services, even where there is an underlying violation of the ADA. *Thurston v. Omni Hotels Management Corp.*, 284 Cal. Rptr. 3d 341, 349 (Ct. App. 2021), *review denied* (Dec. 22, 2021); *see also Reycraft v. Lee*, 99 Cal. Rptr. 3d 746, 751 (Ct. App. 2009) ("[T]he statutory standing requirements to recover monetary damages under [California disability statutes] are not the same as those set forth for litigants who pursue a cause of action under the ADA.")

Unlike ADA claims which focus on injunctive relief, 42 U.S.C. § 12188(a)(2), UCRA also allows for damages, Cal. Civ. Code § 52. California has enacted a "comprehensive statutory scheme" to "increase[] voluntary compliance with equal access standards [for construction-related claims] 'while protecting businesses from abusive access litigation.'" *Mundy v. Pro-Thro Enters.*, 121 Cal. Rptr. 3d 274, 277 (Cal. App. Dep't Super. Ct. 2011) (quoting *Munson v. Del Taco, Inc.*, 208 P.3d 623, 633 (Cal. 2009)); *see also* Cal. Civ. Code § 55.56, Cal. Civ. Proc. Code § 425.55(a)(2), (b). California enacted safeguards to "ensure that the claims [were] warranted." *Id.* § 425.55(b). Applying these construction-related safeguards, a plaintiff must establish (1) a violation under section 51 and (2) denial of "full and equal access to the place of public accommodation on a particular occasion." *See* Cal. Civ. Code § 55.56(a)–(c).

As we recognized in *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165 (9th Cir. 2010), California courts have long required that to obtain damages under UCRA (or its related Disabled Persons Act), a plaintiff must intend to use that business's services. *See Reycraft*, 99 Cal. Rptr. 3d at 756. In *Antoninetti*, we rejected a plaintiff's request for damages for dates when plaintiff visited Chipotle for reasons other than "to purchase food or to have the 'Chipotle experience.'" 643 F.3d at 1177 (recognizing that plaintiff must show that "he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being served and to purchase food in the manner offered and actually encountered access to the restaurant that was not full and equal") (alterations omitted) (quoting *Reycraft*, 99 Cal. Rptr. 3d at 756).

The California Supreme Court affirmed this intent requirement in *White v. Square, Inc.*, 446 P.3d 276 (Cal. 2019). The California Supreme Court recognized that at the pleadings stage it was sufficient for a plaintiff to allege an intent to use a business's services, but clarified that, at the summary judgment or trial stage, a plaintiff must establish that he or she "actually possess[ed] a bona fide intent to . . . use its services." *See id.* at 284.

This requirement was applied in *Thurston*, 284 Cal. Rptr. 3d at 348. The appellate court rejected an argument that motivation was not an element of UCRA, explaining: "While we agree that an Unruh Act claimant need not be a client or

customer of the covered public accommodation, and that he or she need not prove intentional discrimination upon establishing an ADA violation, we do not agree that an Unruh Act claimant's intent or motivation for visiting the covered public accommodation is irrelevant to a determination of the merits of his or her claim." *Id.* at 349. The court noted that the plaintiff had standing to assert a claim but failed to prove at trial that she "actually possess[ed] a *bona fide intent* to use its services." *Id.* (alteration omitted) (quoting *White*, 446 P.3d at 284). Thus, it appears that under California law Arroyo had to establish that (1) he "actually presented himself" to Rainbow Cleaners "with the intent of . . . utilizing its services," *Reycraft*, 99 Cal. Rptr. 3d at 756, and (2) the parking space violation caused him to "experience[] difficulty, discomfort, or embarrassment because of the violation," Cal. Civ. Code § 55.56(c); *see also Mundy*, 121 Cal. Rptr. 3d at 278.

On the record before us, Arroyo has not shown that the district court erred by requiring that in order to obtain damages under UCRA, Arroyo, at trial, had to establish that he actually intended to utilize Rainbow Cleaners' services. *See White*, 446 P.3d at 284; *Thurston*, 284 Cal. Rptr. 3d at 349; *Reycraft*, 99 Cal. Rptr. 3d at 756.

This conclusion does not conflict with our opinion in *Rosas*, 19 F.4th 1202. In *Rosas*, the district court, after finding that uncontested evidence established that Arroyo intended to visit the store, *id*. at 1208, declined to exercise supplemental

6

jurisdiction. Thus, California's bona fide intent requirement was not at issue, and we did not address *Thurston*. Indeed, we recognized that the distinct requirements of UCRA created exceptional circumstances that might justify declining supplemental jurisdiction. *Id*. at 1211–14. We held, however, that the district court abused its discretion in declining supplemental jurisdiction at a "very late stage" of the litigation because it "ha[d] effectively already decided" Arroyo's UCRA claim. *Id*. at 1214. Thus, unlike in our case, the district court in *Rosas* in deciding whether to exercise supplemental jurisdiction had already considered (1) whether Arroyo "intended to visit the store again the future"; (2) whether he had suffered "difficulty, discomfort[,] inconvenience, embarrassment, anxiety and frustration"; (3) "why he was in 'the geographic area of the defendant's business'"; and (4) "why, specifically, he 'desired to access the defendant's business.'" *Id.* at 1208, 1215–16 (quoting Cal. Civ. Proc. Code § 425.50). The limitation of our opinion in *Rosas* is clear from our treatment of Arroyo's second claim for an "award of statutory damages based on his claim that he was also deterred from visiting the store in the future." *Id*. at 1215. We denied a second award holding that Arroyo's declaration "is enough to warrant prospective injunctive relief under the ADA, but it is not enough to show that he was actually deterred on a 'particular' occasion." *Id*. Thus, we read *Rosas* as not precluding the district court's application of California's bona fide intent to the trial of Arroyo's UCRA claim.

7

**2.** Arroyo has not shown that the record does not support the district court's finding that he lacked a bona fide intent. The district court questioned the plausibility of Arroyo's testimony that Rainbow Cleaners was a convenient place to get his jacket fixed and that he believed that Rainbow Cleaners could fix a snap button within the allotted time frame. The district court also considered Arroyo's litigation history, as allowed by Cal. Civ. Proc. Code § 425.55, in determining whether Arroyo had a bona fide intent to use Rainbow Cleaners' services. Arroyo argues that his litigation history should not be used in making credibility determinations, citing *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). *See also Langar v. Kiser*, 57 F.4th 1085 (9th Cir. 2023). But even assuming that *D'Lil* applies to UCRA claims, we only cautioned courts from making "credibility determinations that rely on a plaintiff's past ADA litigation." 538 F.3d at 1040. Here, Arroyo's "past ADA litigation" was only one factor in the district court's factual determination that he lacked a bona fide intent to use Rainbow Cleaners. The district court's factual finding is entitled to great deference, *see D'Lil*, 538 F.3d at 1035, and is not "clearly erroneous to the point of being illogical, implausible, or without support in inferences from the record," *Oakland Bulk & Oversized Terminal, LLC*, 960 F.3d at 613.

**D.**

Finally, Arroyo has failed to show that the district court erred in not allowing him to pursue a parking lot gradient claim after Defendants had remediated his initial claims that the handicapped parking space was inaccessible.

The district court properly granted summary judgment based on Arroyo's newly raised claim under the ADA. Arroyo's failure to raise the gradient issue prior to November 2019 precluded "fair notice" to Defendants of the "specific barriers for which [Arroyo sought] injunctive relief." *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011). Contrary to Arroyo's assertions, rejection of this claim does not violate the mootness doctrine or Federal Rules of Civil Procedure 8 or 15. None of these provisions alleviate Arroyo's obligation to identify specific barriers. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1178 (9th Cir. 2021) (rejecting plaintiff's argument that defendants could avoid liability by remedying identified barriers, noting that a plaintiff could avoid such a result by (1) conducting discovery prior to a summary judgment motion being filed, (2) "identifying other barriers within the defendant's facility, and [(3)] amending his complaint"). Finally, the district court was not required to allow Arroyo to amend his complaint almost two years after the complaint was filed. *See Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000) (holding that when "a party does not ask the district court for leave to amend, 'the request [on appeal] to remand with instructions to permit amendment comes too late.'") (alteration in original).

**AFFIRMED.**

*Arroyo v. Golbahar*, 22-55182

H.A. THOMAS, Circuit Judge, concurring in part and dissenting in part:

I join the portion of the majority disposition affirming the district court's grant of summary judgment to Robert Golbahar on Rafael Arroyo's parking lot gradient claim. I disagree, however, with the majority's holding that California's Unruh Civil Rights Act ("UCRA" or "Unruh Act") requires a plaintiff to have a "bona fide intent" to use a business's services, even when the plaintiff has independently established a violation of the Americans with Disabilities Act of 1990 ("ADA"). I therefore respectfully dissent from the majority's decision to affirm the district court's judgment in favor of Golbahar on Arroyo's UCRA claim.

The UCRA states that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of" the UCRA. Cal. Civ. Code § 51(f). Both we and the Supreme Court of California have therefore made clear that "a violation of the ADA is automatically, without more, a violation of the Unruh Act." *Arroyo v. Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021); *Munson v. Del Taco, Inc.*, 208 P.3d 623, 630 (Cal. 2009) ("all ADA violations . . . [are] violations of the Unruh Civil Rights Act as well.") (citing Cal. Civ. Code § 51(f)). It is undisputed that Golbahar violated the ADA by failing to provide a van-accessible parking space at his business. Accordingly, the district

1

court should have entered judgment for Arroyo on his UCRA claim. *See Rosas*, 19 F.4th at 1216.

The majority holds that Arroyo lacked statutory standing to bring a claim for a UCRA violation. In the majority's view, a plaintiff must have a "bona fide intent" to use a defendant's services to have standing under the UCRA. California law, however, contains no such requirement. California Civil Code Section 55.56 provides two routes through which a plaintiff may seek statutory damages for a "construction-related accessibility claim." Cal. Civ. Code § 55.56(a); *see also Rosas*, 19 F.4th at 1214. A plaintiff may bring a claim "only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b). A plaintiff who personally encounters a violation "may" bring a claim "if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." *Id.* § 55.56(c). Nothing in the statute imposes a requirement that the plaintiff seeking statutory damages have a "bona fide intent" to use a defendant's services. It "may be sufficient"—though not necessary—for a plaintiff to encounter an unlawful barrier, and experience "difficulty, discomfort, or embarrassment" as a result. *Id.*

The majority cites the Supreme Court of California's decision in *White v. Square, Inc.* for the rule that a UCRA plaintiff must have a "bona fide intent" to

2

use the defendant's services. 446 P.3d 276, 284 (Cal. 2019). But *White* does not stand for such a general principle. In *White*, the plaintiff visited the defendant's website but declined to enter into an agreement with the defendant after encountering discriminatory terms and conditions. *Id.* at 278. Because the plaintiff did not actually use the defendant's services, his bona fide intent to do so was relevant to show that he was actually deterred by the discriminatory policy rather than merely aware of such a policy. *See id.* at 278, 280–81 (explaining that "mere awareness of a business's discriminatory policy or practices is not enough for standing.").

The plaintiff in *White* did not attempt to rely on an ADA violation to support his claim. *See White*, 446 P.3d at 278. *White* therefore did not disturb *Munson's* holding that, while some provisions of UCRA may impose stricter requirements than the ADA, the "effect" of Section 51(f) is to "create an exception" to these requirements when the plaintiff can independently establish a violation of the ADA. *Munson*, 208 P.3d at 630. Additionally, standing to raise a "construction-related accessibility claim" does not require that a plaintiff be deterred from using a business's services, so long as the plaintiff "personally encountered the violation on a particular occasion." Cal. Civ. Code § 55.56(b). Because the plaintiff's standing in *White* was based on the deterrent effect of the defendant's

3

discriminatory policy, the decision's standing analysis does not apply to a UCRA claim based on a violation that the plaintiff personally encountered.

The majority's reliance on *Thurston v. Omni Hotels Management Corp.*, 69 Cal. App. 5th 299 (2021), is similarly misplaced. The plaintiff in *Thurston* sued a travel website, alleging that the website was not accessible to visually impaired persons in violation of the ADA and UCRA. *Id.* at 302. The *Thurston* court held that the plaintiff's UCRA claim required the plaintiff to have a "bona fide intent" to use the defendant's services. *Id.* at 308 (quoting *White*, 446 P.3d at 276). *Thurston*, however, did not hold that this intent requirement was a necessary element of UCRA standing[1]—on the contrary, the court held that the plaintiff "had standing to assert an Unruh Act claim." *Id.* at 309.

Instead, *Thurston* held that the plaintiff's intent was relevant to the "merits of her claim." *Id.* But *Thurston* predates our holding in *Rosas* that an ADA violation "automatically" constitutes a violation of the UCRA. *Rosas*, 19 F.4th at 1214 (citing Cal. Civ. Code § 51(f)). To the extent that *Thurston* requires a plaintiff to show a bona fide intent to use a defendant's services to succeed on the merits of a UCRA claim, even when the plaintiff has independently established an ADA

---

[1] Additionally, Thurston did not deal with a "construction-related accessibility claim." *See* Cal. Civ. Code § 55.56.

4

violation, its ruling is foreclosed by our precedent in *Rosas*,[2] *id.*, and the holding of

the Supreme Court of California in *Munson*, 208 P.3d at 630. We need not follow

it. *See Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016) (when deciding a

question of state law, "we look to intermediate appellate courts for guidance,

although we are not bound by them if we believe that the state supreme court

would decide otherwise."), *accord DW Aina Le'a Dev., LLC v. State of Hawai'i*

*Land Use Comm'n*, 918 F.3d 602, 607 (9th Cir. 2019).

The majority also cites our decision in *Antoninetti v. Chipotle Mexican Grill,*

*Inc.*, for the proposition that a UCRA plaintiff must "present[] himself to the

[business] on a particular occasion, as any other customer would do, with the intent

of being . . . served." 643 F.3d 1165, 1177 (9th Cir. 2010) (quoting *Reycraft v. Lee*,

177 Cal. App. 4th 1211, 1224 (2009)). As we explained in *Antoninetti*, however,

the plaintiff's intent was relevant because the violations at issue "occurred only

when he visited the restaurants to purchase food and sat in line in his wheelchair."

*Id.* Accordingly, when the plaintiff visited the restaurant purely for the purposes of

litigation, he could neither be deterred from ordering food at the restaurant, nor

personally encounter a relevant violation. *Cf.* Cal. Civ. Code § 55.56.

---

[2] The majority argues that its holding is consistent with *Rosas*, noting that the district court in that case had already assessed the plaintiff's intent to visit the defendant's store. But our decision in *Rosas* explained that intent was relevant to the plaintiff's "*second* award of statutory damages based on his claim that he was . . . deterred from visiting the store in the future." *Rosas*, 19 F.4th at 1215 (emphasis added). The plaintiff's *first* claim for statutory damages, based on a violation that he "personally encountered," required no showing of intent. *See id.* at 1214–15 (quoting Cal. Civ. Code § 55.56(b)).

Even assuming such an intent requirement applies to this case, it still would not support the district court's judgment. *Antoninetti* required that the plaintiff have an intent to use the defendant business's services to maintain an action for damages, but it did not inquire into the plaintiff's motivation for using those services. *See Antoninetti*, 643 F.3d at 1177. Here, however, the district court found that Arroyo lacked standing to seek statutory damages under UCRA because of his desire "to inspect the business for possible construction-related accessibility barriers and to file a lawsuit under the ADA and Unruh Act." Nothing in our precedent or California law bars UCRA claims arising out of visits motivated by a desire to initiate litigation. Arroyo's intent to use Golbahar's services—even if motivated by a desire to sue Golbahar—is sufficient for standing under the UCRA. Regardless of his motivations, Arroyo attempted to utilize Golbahar's parking space "as any other customer would do, with the intent" of utilizing it "in the manner offered," and "actually encountered access . . . that was not full and equal." *Reycraft*, 177 Cal. App. 4th at 1224.

The "bona fide intent" requirement that the district court applied, and which the majority affirms, creates a roadblock to "tester" standing for damages claims brought under the UCRA. California law, though, contains no prohibition on tester litigation, and the Supreme Court of California has already declined invitations to impose extra-statutory restrictions on UCRA standing in order to curb serial

6

litigation tactics. *See Angelucci v. Century Supper Club*, 158 P.3d 718, 729 (Cal. 2007) ("It is for the Legislature . . . to determine whether to alter the statutory elements of proof to afford business establishments protection against abusive private legal actions and settlement tactics."); *see also Munson*, 208 P.3d at 633 ("[W]e are bound to interpret the Unruh Civil Rights Act in accordance with the legislative intent as we can best discern it, regardless of any policy views we may hold."). Because it is undisputed that Golbahar violated the ADA, our precedent requires judgment for Arroyo on his UCRA claim as well. *Rosas*, 19 F.4th at 1216.